**UNITED STATES of America,
Plaintiff,**

v.

**Chou–Jin KIANG, Defendant.**

**No. 00–CV–75467–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 13, 2001.

Mary S. Rigdon, Eastern District of Michigan, U.S. Attorney's Office, Detroit, MI, for United States of America, plaintiffs.

Krista L. Carpenter, Michael Piston Assoc., Michael E. Piston, Troy, MI, for Chou Jin Kiang, defendants.

### OPINION AND ORDER

ZATKOFF, Chief Judge.

#### I. INTRODUCTION

This matter is before the Court on the Government's Motion for Summary Judgment. Defendant Chou–Jin Kiang responded and the Government replied. The Court finds that the facts and legal arguments are adequately presented in the parties' briefs and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, the Government's Motion for Summary Judgment is GRANTED.

#### II. BACKGROUND

This case involves an action by the Government, pursuant to section 340(a) of the

Immigration and Nationality Act, *see* 8 U.S.C. § 1451(a), to revoke and set aside an order of naturalization of Defendant and to cancel his certificate of naturalization. The factual and procedural history of this case is best summarized in chronological order.

## A. Factual and Procedural History

Defendant, a native of Taiwan, was born on January 10, 1955 and entered the United States as a non-immigrant on December 10, 1986. Defendant became a lawful permanent resident alien of the United States on August 16, 1990. On November 9, 1993, Defendant was arrested by the Ferndale Police Department in Ferndale, Michigan, and charged with kidnaping, and second and fourth degree criminal sexual conduct. The victim is a female who was fourteen years old at the time of the incident.

In a police report and preliminary examination regarding the incident, the victim alleged that Defendant, whom she has known since she was in sixth grade, called and subsequently picked her up to go shopping. On the way back to Defendant's vehicle after exiting a retail clothing store, Defendant told the victim that they were going back to his apartment to have sex; the victim declined Defendant's solicitation. Defendant then offered the victim a ride home, which the victim accepted due to the significant distance to her home from the retail store. Once the victim entered Defendant's vehicle, Defendant drove in the opposite direction of the victim's home, began rubbing the victim's legs, stomach, and breasts with his hand as he drove, and repeatedly told the victim that they were going to his house to have sex. The victim told Defendant "no" and attempted to exit Defendant's vehicle, only to discover that Defendant had disabled the passenger door handle on the inside. Defendant refused to allow the victim to exit the vehicle and drove around many side streets in an apparent attempt to confuse the victim about the location of his home. Upon arriving at Defendant's apartment, Defendant told the victim they were going to have sex and then exited and walked around the vehicle to open the passenger door and allow the victim to exit the vehicle. The victim allowed Defendant to get a few steps ahead of her and broke into a sprint to flee Defendant. Defendant subsequently ran back to his parked car and began chasing the victim in his vehicle. The victim was able to evade Defendant and call the police. Upon his arrest, Defendant consented to a search of his vehicle and the police confirmed that the inside handle on the passenger door of Defendant's vehicle was not operable.

On February 23, 1995, Defendant pleaded no contest to one count of fourth degree criminal sexual conduct in the Sixth Judicial Circuit Court in Pontiac, Michigan, in violation of section 750.520e of the Michigan Compiled Laws (hereinafter "M.C.L.").[1] On March 23, 1995, as a result of his conviction for fourth degree criminal sexual conduct, Defendant was sentenced to three years probation, which expired on March 16, 1998, and was fined $1,150 and probation fees.

On December 26, 1995, nine months after his arrest and conviction, Defendant filed with the Immigration and Naturalization Service (hereinafter "INS") an Application for Naturalization, INS Form N–400, which he signed under penalty of perjury. Question 15(b) in Part 7 of the Application for Naturalization asks: "Have you ever: ... been *arrested*, cited, *charged*, indicted, *convicted*, *fined* or imprisoned for *breaking or violating any law*

---

1. *See infra* Part IV.B.2.a (discussing the substance of M.C.L. § 750.520e and the corresponding dispute regarding which version of the law applies to Defendant's crime).

or ordinance ... ?" (emphasis added). Defendant answered "No."[2] On August 16, 1996, Defendant was interviewed, under oath, by an INS officer on his application for naturalization. On the basis of his written application and naturalization interview, the INS approved Defendant's application for naturalization on August 16, 1996. On September 11, 1996, Defendant took the oath of allegiance and was issued a Certificate of Naturalization. The events surrounding Defendant's naturalization process all occurred during Defendant's three-year probationary period, which expired on March 16, 1998.

## B. The Government's Position

The Government has moved, pursuant to 8 U.S.C. § 1451, to revoke Defendant's order of naturalization and cancel his certificate of naturalization on two separate and independent grounds. The revocation statute states in pertinent part:

It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of

naturalization were *illegally procured* or were procured by concealment of a material fact or by willful misrepresentation . . . .

8 U.S.C. § 1451(a) (emphasis added). The Government argues first that Defendant's naturalization was "illegally procured" under § 1451 because he was convicted of fourth degree criminal sexual conduct under M.C.L. § 750.520e, which the Government asserts is a crime of moral turpitude according to 8 U.S.C. § 1101(f)[3] and a violation of the requirements for naturalization under 8 U.S.C. § 1427.[4] The statutory period for which good moral character is required includes five years prior to Defendant's filing of his application for naturalization and continued until Defendant took the oath of allegiance and became a citizen of the United States. *See* 8 U.S.C. § 1427; 8 C.F.R. § 316.10. Given that Defendant filed his application for naturalization on·December 25, 1995, and took the oath of allegiance on September 11, 1996, Defendant was required to be a person of good moral character from December 1990 through September 11, 1996. The Government avers that because Defendant was convicted on February 23, 1995 of committing a crime of moral turpitude on or about November 9, 1993, he could not establish good moral character during the statutory period and thus was not statutorily eligible for naturalization. Further, argues the Government, because

---

**2.** Although it appears Defendant initially marked "Yes," he scribbled out that mark and unequivocally answered the question in the negative. His intention to answer question 15(b) in the negative is further evinced by his failure to append to his application the specific facts surrounding the offenses that is required upon an affirmative answer to question 15(b).

**3.** 8 U.S.C. § 1101(f) defines a non-exhaustive class of violations that preclude a finding of good moral character under § 1427. *See infra* note 6 and accompanying text.

**4.** 8 U.S.C. § 1427(a)(3) provides:

No person ... shall be naturalized unless such applicant, ... during all the periods referred to in this subsection has been and still is a person of *good moral character*, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a)(3) (emphasis added).

Defendant's commission and conviction of fourth degree criminal sexual conduct made him statutorily ineligible for naturalization, his naturalization was illegally procured in violation of § 1451 and must therefore be revoked.

In the alternative, the Government argues that Defendant's naturalization was illegally procured because his criminal probation barred the approval of his naturalization application. An INS regulation prohibits the INS from finding good moral character, and thus approving an application for naturalization, while an applicant remains on probation. *See* 8 C.F.R. § 316.10(c)(1) ("An application will not be approved until after the probation ... has been completed."). In his deposition testimony Defendant admitted that he was on probation from March 1995 through March 16, 1998. Defendant was on probation on August 16, 1996, the date the INS approved his naturalization application, and on September 11, 1996, the date he took the oath of allegiance. Therefore, the Government argues that Defendant was ineligible for naturalization under 8 C.F.R. § 316.10(c)(1) and thus his naturalization was illegally procured under § 1451(a) and must be revoked.

## C. Defendant's Position

Defendant argues that fourth degree criminal sexual conduct under M.C.L. § 750.520e is not a crime of moral turpitude because it does not involve or require criminal or evil intent. Defendant avers that the Board of Immigration Appeals has repeatedly held that the question of whether a crime is found to be one of moral turpitude turns on whether evil intent is an essential element of the crime. Defendant alleges that Michigan courts have found fourth degree criminal sexual con-

duct to be a general intent crime, as opposed to specific intent crime, and such a general intent crime does not involve evil intent. By implication, Defendant argues that evil intent is equated with specific intent. Because M.C.L. § 750.520e does not have evil intent as one of its elements, Defendant argues that it is not a crime of moral turpitude and therefore Defendant was not barred from establishing good moral character during the statutory period and his naturalization was not illegally procured.

Defendant also argues that the relevant authority relied upon by the Government to prove Defendant's moral turpitude involves criminal sexual conduct with minors. Concomitantly, Defendant argues that he was not convicted of criminal sexual conduct with a minor, despite the fact that the victim was a fourteen at the time of the offense and the current version of M.C.L. § 750.520e provides as one of its bases for culpability the fact that a perpetrator engages in sexual contact with another person who is "at lease 13 years of age but less than 16 years of age, and the actor is 5 or more years older than that other person." MICH. COMP. LAWS § 750.520e(1)(a). The current version of section (1)(a) was added to M.C.L. § 750.520e through P.A.1994, No. 213, § 1, and became effective October 1, 1994. However, Defendant's conviction was for a violation of M.C.L. § 750.520e(1) as it existed on November 9, 1993, as is stated in the People's General Information on the same date. Therefore, Defendant avers that the Government, by implication from its cited authority, is relying on the victim's minority and the current version of M.C.L. § 750.520e in arguing that Defendant's crime is one of moral turpitude.[5]

---

**5.** Indeed, in its Motion for Summary Judgment, the Government cites in full the current version of M.C.L. § 750.520e.

Defendant argues that this violates the Ex Post Facto Clause of the United States Constitution. *See* U.S. CONST. art. I, § 10, cl. 1.

Defendant further argues that because the record is devoid of any indication of under what section of M.C.L. § 750.520e(1), old version or current, Defendant was convicted, the Government is tasked with the responsibility of proving that each and every potential ground for conviction under this statute is a crime of moral turpitude. Because the Government has failed to produce such proof, Defendant maintains that the Government has failed to carry its burden to prove that M.C.L. § 750.520e is a crime of moral turpitude by "clear, convincing, and unequivocal evidence" that "leaves no issue in doubt." *United States v. Koziy*, 728 F.2d 1314, 1318 (11th Cir.1984) (citing *Fedorenko v. United States*, 449 U.S. 490, 505, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981)).

Responding to the Government's second argument, Defendant avers that naturalization is illegally procured only when an applicant is *statutorily* ineligible for naturalization, not ineligible according to a regulation promulgated by an administrative agency like the INS. In essence, Defendant takes the position that Congress alone, and not the executive branch, has the constitutional authority to prescribe rules for naturalization and Congress has not imposed any prohibition upon individuals on probation being granted citizenship. Therefore, the proscription on naturalizing applicant's on probation under 8 C.F.R. § 316.10(c)(1) cannot serve as a basis for revoking Defendant's naturalization.

Even if an INS regulation can prescribe conditions of naturalization, Defendant avers that the INS regulation prohibiting the naturalization of an applicant while on probation is *ultra vires* and bears no rational relationship to the statutory criteria for naturalization as set forth by Congress.

Therefore, Defendant argues that 8 C.F.R. § 316.10(c)(1) is invalid and cannot form the basis of the Government's revocation of Defendant's naturalization.

## III. STANDARD OF REVIEW

Summary judgment is appropriate only if the answers to interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The non-moving party must do

more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993).

## IV. ANALYSIS

■ The Court finds that 8 C.F.R. § 316.10(c)(1) is not *ultra vires* and that Defendant violated its strictures when he procured his naturalization while on probation. Further, the Court finds that Defendant's violation of M.C.L. § 750.520e(1) was a crime of moral turpitude. Therefore, Defendant's naturalization was illegally procured and must be revoked in accord with 8 U.S.C. § 1451(a).

## A. Illegal Procurement under 8 U.S.C. § 1451(a)

An order of citizenship and certificate of naturalization will be revoked if the applicant 1) conceals material facts or makes a willful misrepresentation or 2) the order and certificate of naturalization are illegally procured. *See* § 1451(a); *see also su-*

*pra* Part II.B. The Government contends that Defendant's order and certificate of naturalization were illegally procured because Defendant's conviction of fourth degree criminal sexual conduct belies the good moral character required for effective naturalization. *See* § 1427; *see also supra* note 4 and accompanying text. The Government attempts to prove Defendant's moral turpitude on two separate grounds.

## B. Moral Turpitude

One of the essential requirements for naturalization is that the applicant be a person of "*good moral character*, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." § 1427(a)(3) (emphasis added). In defining good moral character, Congress articulated seven classes of moral turpitude that would preclude a finding of good moral character. *See* § 1101(f)(1)-(8).[6] However, Congress concludes its definition of good moral character with the following admonition: "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other

---

**6.** The seven classes are as follows:

No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

(1) a habitual drunkard;

(2) [Repealed]

(3) a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (9)(A) of section 1182(a) of this title; or subparagraphs (A) and (B) of section 1182(a)(2)of this title and subparagraph (C) thereof of such section (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;

(4) one whose income is derived principally from illegal gambling activities;

(5) one who has been convicted of two or more gambling offenses committed during such period;

(6) one who has given false testimony for the purpose of obtaining any benefits under this Act;

(7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

(8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section).

8 U.S.C. § 1101(f)(1)-(8).

reasons such person is or was not of good moral character." § 1101(f).

### 1. 8 C.F.R. § 316.10(c)(1)

INS regulation 8 C.F.R. § 316.10(c)(1) is a reasonable construction of Congress's statutory definition of good moral character.

■ As the administrative agency entrusted to administer the congressional provisions of the Immigration and Nationality Act, the INS is necessarily required to formulate policy and make rules to fill any implicit or explicit gap left by Congress. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In its definition of what constitutes a lack of good moral character, Congress was crystal clear that the INS was delegated with the authority to elucidate that definition by regulation. *See* 8 U.S.C. § 1101(f) ("The fact that any person is not within any of the foregoing classes *shall not preclude a finding that for other reasons* such person is or was not of good moral character.") (emphasis added); *see also Chevron*, 467 U.S. at 843–44, 104 S.Ct. 2778 ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.").

Interpreting § 1101(f), the INS determined that an applicant on probation cannot have his or her application approved, and therefore cannot be found to have the requisite good moral character, until after the applicant's probation has been completed. *See* 8 C.F.R. § 316.10(c)(1). It is well settled that this Court must give considerable weight to the INS's construction of § 1101, which is part of a statutory scheme the INS is entrusted to administer, and must defer to its administrative interpretations. *See Chevron*, 467 U.S. at 844, 104 S.Ct. 2778. Further, this Court can-

not disturb the INS regulation unless it is "arbitrary, capricious, or manifestly contrary" to § 1101(f). *See id.*

The Court finds that 8 C.F.R. § 316.10(c)(1) is not arbitrary, capricious, or manifestly contrary to § 1101(f). As the Government points out, many of the classes of moral turpitude listed in § 1101(f) refer to individuals who have committed and been convicted of certain classes of crimes. *See* § 1101(f)(3), (5), (8). Therefore, Defendant's unexpired probationary term is a rational factor to consider in determining his good moral character. Accordingly, because Defendant was on probation when he was naturalized, he was precluded from meeting the statutory requirement that he establish his good moral character, *see* 8 U.S.C. § 1427(a)(3), and therefore illegally procured his naturalization in violation of 8 U.S.C. § 1451(a).

Because the crime for which Defendant was convicted and received his sentence of probation was one of moral turpitude, he could not, even after his probation expired, establish the requisite good moral character during the statutory period and thus was not statutorily eligible for naturalization.

### 2. Fourth Degree Criminal Sexual Conduct and Moral Turpitude

■ The Court finds that Defendant's conviction of fourth degree criminal sexual conduct, in violation of M.C.L. § 750.520e(1), was a crime of moral turpitude.

#### a. Correct Version of M.C.L. § 750.520e(1)

The record is devoid of any reference as to under what version and which subpart of M.C.L. § 750.520e(1) Defendant was convicted. Defendant contends that the Government's insistence on referencing the victim's minority status is improper since that subsection, *see* MICH. COMP. LAWS

§ 750.520e(1)(a),[7] did not become effective until October 1, 1994, almost one year after Defendant's November 9, 1993 violation. The Government responds to this assertion with total ambiguity. In Part I.A of its reply, the Government alleges that Defendant violated "all provisions of Section 750.520e," and then seems to quote the pre-October 1, 1994 version. However, in Part I.B., the Government insists that the record of conviction demonstrates that Defendant's conviction "involved criminal sexual conduct on a minor," and then append to this statement a footnote that apparently references the pre-October 1, 1994 version of M.C.L. § 750.520e(1)(a).[8] The Government has apparently taken a neutral position and left it to the Court to sort it out.

The Court will give Defendant the benefit of the doubt and construe his conviction in accord with the statute as it existed prior to October 1, 1994. That version states in its entirety:

(1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if any of the following circumstances exist:

(a) Force or coercion is used to accomplish the sexual contact. Force or coercion includes but is not limited to any of the circumstances listed in [M.C.L. § 750.520b(1)(f)(i)-(iv) ].

(b) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

(c) That the other person is under the jurisdiction of the department of corrections, and the actor is an employee or a contractual employee of, or a volunteer with, the department of corrections who has knowledge that the other person is under the jurisdiction of the department of corrections.

(2) Criminal sexual conduct in the fourth degree is a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $500.00, or both.

MICH. COMP. LAWS § 750.520e (amended 1994).

Now that the applicable version of the statute has been identified, the Court must endeavor to find under which subpart of the statute Defendant was convicted.

 It is axiomatic that when a statute is " 'divisible,' i.e., one which may or may not describe crimes involving moral turpitude," the Court must look to the record of conviction (the information, plea, verdict, and sentence) to ascertain "the exact nature of the offense for which [Defendant] was convicted." *Matter of Imber,* 16 I & N Dec. 256, 257 (BIA 1977); *see also In re Fernando Alfonso Torres–Varela,* 23 I &

---

**7.** The current version reads:
A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if any of the following circumstances exist:
(a) That other person is at least 13 years of age but less than 16 years of age, and the actor is 5 or more years older than that other person.
MICH COMP. LAWS § 750.520e(1)(a).

**8.** This version reads:
A person is guilty of criminal sexual conduct in the fourth degree if he or she en-

gages in sexual contact with another person and if any of the following circumstances exist:
(a) Force or coercion is used to accomplish the sexual contact. Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(i) to (iv).
MICH. COMP. LAWS § 750.520e(1)(a) (amended 1994). The Court also notes that the circumstances of force or coercion referred to in section 520b(1)(f)(i)-(iv) are currently listed in M.C.L. § 750.520e(b)(i)-(iv).

N Dec. 78, \*29 (BIA 2001) (Rosenberg, concurring); *Matter of P*———, 2 I & N Dec. 117, 118–19 (BIA 1944).

The information in this case states that Defendant "did engage in sexual contact with [the victim] ...." The information concludes by citing generally M.C.L. § 750.520e(1). The sentencing transcript indicates that both parties concurred in the court's proffer that it adopt the preliminary examination transcript (hereinafter "transcript") by reference in order to establish a factual basis for the sentencing proceeding. Although the transcript indicates the victim was fourteen years old at the time of the offense, the statutory definition of fourth degree criminal sexual conduct as determined by the Court does not include any reference to the victim's age and therefore it is irrelevant to the Court's determination as to what subpart of the statute Defendant violated.

The transcript indicates that the victim was in Defendant's vehicle, that Defendant refused the victim's repeated requests to take her home, that the victim was unable to exit the vehicle because the passenger-side door handle was disabled on the inside of the car, that the victim was with Defendant against her will as Defendant would not let her exit the vehicle despite repeated requests by the victim, that Defendant forcefully, and without consent, touched the victim's upper legs and breasts, and that the victim pushed Defendant's hands away and persisted with her requests that Defendant allow her to exit the vehicle.

A violation of M.C.L. § 750.520e(1)(a) requires sexual contact accomplished with force or coercion. "Force or coercion includes but is not limited to" a situation where the actor "overcomes the victim through the actual application of physical force or physical violence." MICH. COMP. LAWS § 750.520b(f)(i), *cited in* MICH. COMP. LAWS § 750.520e(1)(a) (amended 1994). It is readily apparent that Defendant's sexual contact with the victim's legs and breasts was accomplished with physical force or coercion. Further, subparts (b) and (c) of M.C.L. § 750.520e(1) are clearly inapplicable to the facts of this case.[9] Therefore, the Court finds that the record in this case demonstrates that Defendant was convicted on a violation of M.C.L. § 750.520e(1)(a) as it existed prior to October 1, 1994.

Now that the Court has identified the applicable version and subpart of the statute at issue in this case, the Court must determine whether Defendant's violation constitutes a crime of moral turpitude.

### b. Defining Moral Turpitude

■ The Board of Immigration Appeals has recently addressed the definition of moral turpitude. Generally, moral turpitude refers to conduct "that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *In re Fernando Alfonso Torres–Varela*, 23 I & N Dec. 78, 2001 BIA LEXIS 10, at \*11–12 (BIA 2001). Further, and directly contrary to Defendant's assertions, an evil or specific intent "is not a prerequisite to finding that a crime involves moral turpitude." *Id.* at \*13, 15. "Neither the seriousness of a criminal offense nor the severity of the sentence imposed is determinative of whether a crime involves moral turpitude." *Id.* at \*16. Rather, the Court must look at the specific statute under which Defendant's conviction occurred. *See id.* Therefore, the Court must look to the statutory definition or the nature of the crime and "engage in an objective analysis of whether the elements

---

**9.** M.C.L. § 750.520e(1)(b) requires that the victim be mentally incapable or incompetent or physically helpless, while subpart (c) requires involvement with the department of corrections.

necessary to obtain a conviction under the particular statute render the offense a crime involving moral turpitude." *Id.* at *17.

Prior to October 1, 1994, fourth degree criminal sexual conduct in violation of M.C.L. § 750.520e(1)(a) required that the defendant engage in sexual contact with another person using force or coercion, which includes but is certainly not limited to actual application of physical force or physical violence. *See* MICH. COMP. LAWS §§ 750.520e(1)(a) (amended 1994); 750.520b(f)(i).

As discussed in prior pages of this Opinion, Defendant used physical force and coercion to accomplish sexual contact with a young woman's genitalia without her consent and despite her repeated verbal and physical attempts to liberate herself from the sexual contact and Defendant's vehicle, the small confines of which enabled Defendant to accomplish the sexual contact via physical force.

Looking objectively at the statutory elements of fourth degree criminal sexual conduct, the Court finds that the statutory elements, and Defendant's satisfaction thereof, are inherently base, vile, and depraved, and "contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Torres–Varela,* 23 I & N Dec. 78, at *11–12. Therefore, the Court finds that Defendant's violation of M.C.L. § 750.520e(1)(a) was a crime of moral turpitude.

■ Having been on probation for committing a crime of moral turpitude, the Court finds that Defendant could not establish the requisite good moral character in accord with 8 U.S.C. § 1427(a)(3) during the statutory period in which good moral character is required, which means that Defendant was naturalized while statutorily ineligible for naturalization. Therefore, his naturalization was illegally procured in violation of 8 U.S.C. § 1451(a) and thus

Defendant's corresponding order of naturalization must be revoked and set aside and his certificate of naturalization must be cancelled.

## V. CONCLUSION

Accordingly, for the reasons stated above, the Government's Motion for Summary Judgment is GRANTED. Further, it is HEREBY ORDERED that the United States Attorney General's order admitting Defendant to United States' citizenship is REVOKED, Defendant's certificate of naturalization is CANCELLED, and Defendant is ORDERED to surrender and deliver his certificate and other indicia of United States' citizenship to the United States Attorney General.

IT IS SO ORDERED.

### *JUDGMENT*

IT IS ORDERED AND ADJUDGED that pursuant to this Court's Opinion and Order dated 13 DEC 2001, this cause of action is DISMISSED WITH PREJUDICE.