**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARTURO NICANOR-ROMERO,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

*Respondent.*

No. 03-73564

Agency No.
A92-881-306

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 7, 2006*
Pasadena, California

Filed April 24, 2008

Before: Harry Pregerson, William A. Fletcher, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge William A. Fletcher;
Partial Concurrence by Judge Pregerson;
Dissent by Judge Bybee

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Steven A. Guilin, San Diego, California, for the petitioner.

Linda S. Wernery, Janice K. Redfern, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

W. FLETCHER, Circuit Judge:

In 1990, a jury convicted Arturo Nicanor-Romero of a violation of California Penal Code § 647.6(a). At the time of his conviction, § 647.6(a) provided, "Every person who annoys or molests any child under the age of 18 shall be punished by a fine . . . , by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment." It has been changed in immaterial respects since Nicanor-Romero's conviction. A violation of § 647.6(a) is a misdemeanor.

The government now seeks to remove Nicanor-Romero to Mexico, based on his § 647.6(a) conviction, for having committed a "crime involving moral turpitude" within the meaning of 8 U.S.C. § 1227(a)(2)(A)(i)(I). We hold that the government has failed to show that Nicanor-Romero's § 647.6(a) conviction makes him removable on this ground.

## I.    Background

Nicanor-Romero was born in Mexico in 1956. In April 1981, he entered the United States without inspection. Soon thereafter, he applied for adjustment of status to lawful permanent resident. His application was granted on January 11, 1990. He has lived here as a lawful permanent resident, working steadily and paying taxes, since then.

On July 3, 1990, Nicanor-Romero was charged in San Diego County, California, with two misdemeanor counts of annoying or molesting a child under the age of eighteen in violation of § 647.6(a). The criminal complaint sheds little light on the underlying facts of the § 647.6(a) violation. For both counts, it simply alleges that, "on or about June 29, 1990, . . . a misdemeanor was committed by said defendant who did annoy or molest" a girl "under the age of 18 years . . . ."

On August 7, 1990, a jury convicted Nicanor-Romero of violating § 647.6(a). The verdict sheet reveals little about the precise nature of Nicanor-Romero's offense. It states only, "We, the jury, . . . find the defendant, Arturo Romero Nicanor, GUILTY of a misdemeanor who did annoy or molest a child under the age of 18 years, in violation of Penal Code section 647.6 . . . ." Nicanor-Romero received a 163-day sentence. As one of the conditions of probation, he was ordered to register as a sex offender. *See* Cal. Penal Code § 290(a)(2)(A).

On January 8, 2001, ten-and-a-half years after his misdemeanor conviction, the government began removal proceed-

ings against him based on the conviction under § 647.6(a). The Notice to Appear charged Nicanor-Romero as subject to removal under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA" or "the Act"), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony "as defined in section 101(a)(43)(A) of the Act, a law relating to sexual abuse of a minor."

The government filed an additional charge of removal in a second Notice to Appear on May 7, 2001. The second Notice contains an apparent error. It charged Nicanor-Romero as removable pursuant to

> Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, as amended, by the Immigration Act of 1990, in that [he was] an alien who has been convicted of a crime involving moral turpitude committed within five years after the date of admission.

The government almost certainly meant to rely on INA § 237(a)(2)(A)(i)(I) rather than INA § 237(a)(2)(A)(ii). As codified at 8 U.S.C. § 1227(a)(2)(A)(ii), INA § 237(a)(2)(A)(ii) makes an alien removable if he or she "at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct . . . ." Yet the government never argued before the agency that Nicanor-Romero's § 647.6(a) conviction satisfied the criterion of "two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct." Given that Nicanor-Romero's § 647.6(a) conviction was for conduct occurring on a single date, it is highly unlikely that it satisfies this criterion. On the other hand, INA § 237(a)(2)(A)(i)(I), 8 U.S.C. § 1227(a)(2)(A)(i)(I), makes an alien removable if he or she "is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission[.]" Nicanor-Romero has made no argument against removal based on the government's charge of removability under § 1227(a)(2)(A)(ii) rather than § 1227(a)(2)(A)

(i)(I). There is no difference in the definition of "moral turpitude" in these two sections.

Nicanor-Romero applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(a), and for waiver of deportation pursuant to former INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996). After a brief hearing, an Immigration Judge ("IJ") concluded that a § 647.6(a) violation categorically constitutes both an "aggravated felony" and a "crime involving moral turpitude." He denied Nicanor-Romero's requested relief and issued a final order of removal. The Board of Immigration Appeals ("BIA") affirmed, and this petition followed.

## II.   Jurisdiction

We have jurisdiction under the REAL ID Act. The jurisdiction-stripping provision of the INA provides that nothing in the statute "which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law . . . ." 8 U.S.C. § 1252(a)(2)(D). Whether a crime is an aggravated felony or involves moral turpitude is a question of law that we have jurisdiction to review. *Notash v. Gonzales*, 427 F.3d 693, 696 (9th Cir. 2005); *Martinez-Perez v. Gonzales*, 417 F.3d 1022, 1024-25 (9th Cir. 2005).

## III.   Merits

Nicanor-Romero makes several arguments challenging his final order of removal. We need respond only to his argument that the government failed to establish that his § 647.6(a) conviction was categorically either an "aggravated felony" or a "crime involving moral turpitude."

### A.   "Aggravated Felony"

In *United States v. Pallares-Galan*, 359 F.3d 1088, 1102-03 (9th Cir. 2004), we held that a violation of § 647.6(a) is not

categorically an aggravated felony, and in particular, not "sexual abuse of a minor," as defined in 8 U.S.C. § 1227(a)(2)(A)(iii). We reasoned that sexual abuse "requires more than improper motivation; it requires conduct that is abusive." *Id.* at 1101-02. In contrast, conduct proscribed under § 647.6(a), "regardless of a defendant's lewd intent," may "involve neither harm or injury to a minor, nor the touching of or by a minor," and therefore "does not constitute 'sexual abuse of a minor' . . . ." *Id.* at 1102. The government concedes that under *Pallares-Galan* it cannot establish that Nicanor-Romero committed an aggravated felony for purposes of the INA.

## B. "Crime Involving Moral Turpitude"

### 1. Standard of Review

Whether a crime involves "moral turpitude" requires us to address two issues of statutory interpretation.

First, what is the definition of "crime involving moral turpitude" under 8 U.S.C. § 1227(a)(2)(A)(i)(I)? We defer to the BIA's interpretation of the INA, provided that the interpretation is reasonable and not inconsistent with the statute's plain meaning. *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1021 (9th Cir. 2005). As we discuss below, however, the BIA has provided little concrete guidance. We agree with the Seventh Circuit that, "[s]ince the Board hasn't done anything to particularize the meaning of 'crime involving moral turpitude,' giving . . . deference to its determination of that meaning has no practical significance." *Mei v. Ashcroft*, 393 F.3d 737, 739 (7th Cir. 2004).

Second, does a petitioner's misdemeanor conviction under § 647.6(a) come within the definition of "crime involving moral turpitude"? Because this inquiry requires an analysis of a California penal statute rather than the INA, we do not defer to the BIA's interpretation on this question. Rather, "[w]e

review de novo whether the statutory basis for an alien's conviction defines a crime involving moral turpitude." *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994).

### 2. Definition of "Crime Involving Moral Turpitude"

Although "the term 'moral turpitude' has deep roots in the law," *Jordan v. De George*, 341 U.S. 223, 227 (1951), it has been criticized as an "undefined and undefinable standard," *id.* at 235 (Jackson, J., dissenting). The phrase "moral turpitude" first appeared in federal immigration law in 1891, when Congress barred "persons who have been convicted of a felony or other infamous crime or misdemeanor involving moral turpitude" from entering the country. Act of Mar. 3, 1891, 26 Stat. 1084. In 1950, a Senate Report admitted that, despite repeated use, the phrase "ha[d] not been definitely and conclusively defined by the courts." S. Rpt. No. 1515, at 351 (Apr. 20, 1950). The 1950 Report defined a crime involving moral turpitude as " '[a]n act of baseness, vileness, or depravity, in the private and social duties which a man owes to his fellow man or to society . . . .' " *Id.* (quoting *United States ex rel. Mylius v. Uhl*, 203 F. 152, 154 (S.D.N.Y. 1913)). The Report, however, refused to commit to a single method for determining whether a crime involves moral turpitude, and instead endorsed a case-by-case approach. *Id.*

**[1]** The BIA defines "crime involving moral turpitude" as "conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and man, either one's fellow man or society in general." *Matter of Short*, 20 I. & N. Dec. 136, 139 (BIA 1989). The BIA concedes that "moral turpitude" is a "nebulous concept," *id.*, and that it does not apply a single set of criteria to determine which offenses qualify. For example, the BIA has declared that "[t]he essence of moral turpitude is an evil or malicious intent," *In re Tran*, 21 I. & N. Dec. 291, 293 (BIA 1996), and that a crime involving moral turpitude "is per se morally reprehensible and intrinsi-

cally wrong or malum in se," *In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999). However, the BIA has also stated that a crime may qualify as one of moral turpitude even if the offense is malum prohibitum or does not require the prosecution to establish specific intent. *See In re Torres-Varela*, 23 I. & N. Dec. 78, 83 (BIA 2001) ("[A]lthough crimes involving moral turpitude often involve an evil intent, such a specific intent is not a prerequisite to finding that a crime involves moral turpitude . . . . While it is generally the case that a crime that is 'malum in se' involves moral turpitude and that a 'malum prohibitum' offense does not, this categorization is more a general rule than an absolute standard."); *see also Matter of Medina,* 15 I. & N. Dec. 611, 614 (BIA 2001) (holding that violation of Illinois assault statute requiring a mens rea of recklessness was a crime involving moral turpitude).

We have held that "[c]rimes of moral turpitude are of basically two types, those involving fraud and those involving grave acts of baseness or depravity." *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005). We look to "accepted moral standards" to determine what conduct falls within the latter category. *See Rodriguez-Herrera v. INS*, 52 F.3d 238, 240 (9th Cir. 1995) (internal quotation marks omitted). Under this approach, we have held that some crimes, such as incest with a minor and spousal abuse, clearly involve moral turpitude. *See Gonzalez-Alvarado*, 39 F.3d at 246-47 (incest with a minor); *Gragreda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993) (spousal abuse). In contrast, we have held that battery, burglary, and possession of a firearm are not categorically crimes involving moral turpitude. *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1055 (9th Cir. 2006) (battery); *Cuevas-Gaspar*, 430 F.3d at 1020 (burglary); *Komarenko v. INS*, 35 F.3d 432, 435 (9th Cir. 1994) (firearm offense).

We have not relied on a consistent or easily applied set of criteria to reach these results. The distinction between malum in se and malum prohibitum is one important indicator, *see,*

*e.g.*, *Beltran-Tirado v. INS*, 213 F.3d 1179, 1184 (9th Cir. 2000), but not all malum in se crimes categorically involve moral turpitude. *See Galeana-Mendoza*, 465 F.3d at 1055 (concluding that battery does not categorically involve moral turpitude); *Cuevas-Gaspar*, 430 F.3d at 1019-20 (concluding that burglary does not categorically involve moral turpitude). We have declared that whether a crime involves moral turpitude "turns on whether evil intent . . . is an essential element of the crime." *Goldeshtein v. INS*, 8 F.3d 645, 647 (9th Cir. 1993). But, "[w]hile mental state is an important factor," we have also "reject[ed] the contention that all crimes requiring some degree of evil intent are necessarily crimes involving moral turpitude." *Rodriguez-Herrera*, 52 F.3d at 241.

**[2]** A crime's actus reus requirement is an important consideration. However, "it is the *combination* of the base or depraved act and the willfulness of the action that makes the crime one of moral turpitude." *Grageda*, 12 F.3d at 922 (emphasis added). A crime with trivial consequences does not necessarily involve moral turpitude just because it requires the defendant to act with criminal intent. Conversely, an offense with serious consequences may involve moral turpitude even if the defendant acts only recklessly when committing it. *Compare Matter of Wojtkow*, 18 I. & N. Dec. 111 (BIA 1981) (concluding that second-degree manslaughter, which requires a showing of recklessness, involves moral turpitude), *with In re Fualaau*, 21 I. & N. Dec. 475, 477 (BIA 1996) (concluding that simple assault, which also requires a showing of recklessness, does not involve moral turpitude). *See also Mei*, 393 F.3d at 740 ("[C]rimes deemed not to involve moral turpitude . . . are either very minor crimes that are deliberate or graver crimes committed without a bad intent, most clearly strict-liability crimes."). Thus, both the actus reus and the mens rea must be considered in concert to determine whether the behavior they describe is sufficiently culpable to be labeled morally turpitudinous.

### 3.  Application to Misdemeanor Conviction under § 647.6(a)

Based on the above guidance, such as it is, we now turn to Nicanor-Romero's crime. To determine if his misdemeanor conviction under § 647.6(a) is a conviction for a "crime involving moral turpitude," we apply the categorical and modified-categorical approaches. *See Cuevas-Gaspar*, 430 F.3d at 1017.

#### a.  Categorical Approach

##### i.  Section 647.6(a)

**[3]** The categorical approach, first articulated in *Taylor v. United States*, 495 U.S. 575 (1990), requires that we "make a categorical comparison of the elements of the statute of conviction to the generic definition" of moral turpitude, and then "decide whether the conduct proscribed [in the statute] is broader than, and so does not categorically fall within, this generic definition." *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 887 (9th Cir. 2003). Under the categorical approach, we look only to the fact of the conviction and the statutory definition of the alien's offense. *Cuevas-Gaspar*, 430 F.3d at 1017. "The issue is not whether the actual conduct constitutes a crime involving moral turpitude, but rather, "whether the *full range of conduct* encompassed by the statute constitutes a crime of moral turpitude." *Id.* (emphasis added).

We note at the outset that we agree entirely with Judge Bybee's sentiments about the moral horror of sexual predation on children. Judge Bybee writes, and we agree:

> Perhaps no conduct so unequivocally violates American ethics as that which encompasses both of these categories, namely sexual predation upon the most vulnerable members of our society. Children in particular—because of their naiveté, their depen-

dence on adults, and their inability to understand, flee, or resist such advances—are vulnerable to adults who seek to take advantage of them sexually. Thus, we find such conduct especially repulsive and worthy of the severest moral opprobrium.

Dissent at 4345. The question in this case, however, is whether the behavior prohibited by § 647.6(a) may categorically be grouped with the crimes of "sexual predation" that elicit the moral revulsion described above. *Cf. Quintero-Salazar*, 506 F.3d 688, 694 (9th Cir. 2007) (concluding that a California statute prohibiting consensual intercourse between an adult 21 or older and a minor under 16 encompassed conduct that is not " 'so far contrary to the moral law' as to 'give rise to moral outrage' ") (quoting *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1071 (9th Cir. 2007)); *Pallares-Galan*, 359 F.3d at 1102-03 (holding that a violation of § 647.6(a) is not "sexual abuse of a minor," as defined in 8 U.S.C. § 1227(a)(2)(A)(iii)). That is, the question is not whether *some* of the conduct prohibited by § 647.6(a) is morally turpitudinous. The question, rather, is whether *all* of the conduct prohibited by § 647.6(a) is morally turpitudinous.

**[4]** When Nicanor-Romero was convicted, § 647.6(a) provided that "[e]very person who annoys or molests any child under the age of 18 shall be punished by a fine . . . , by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment." To prove a violation of § 647.6(a), the State must prove both actus reus and mens rea. It must show that the defendant (1) engaged in "conduct a normal person would unhesitatingly be irritated by" and (2) was "motivated by an unnatural or abnormal sexual interest in the victim." *People v. Lopez*, 19 Cal. 4th 282, 289 (1998) (internal quotation marks omitted); *see also* Cal. Jur. Instr. (Crim.) § 16.440, *Annoying or Molesting a Child* (7th ed. 2005); *People v. Kongs*, 30 Cal. App. 4th 1741, 1750 (1994). As construed by California courts, these two requirements

encompass a broader swath of behavior than their formal description suggests.

**[5]** Section 647.6(a)'s actus reus requirement — "conduct a normal person would unhesitatingly be irritated by" — can be satisfied fairly easily. Without its mens rea requirement, § 647.6(a) would prohibit many acts that hardly shock the public conscience as gravely base or depraved. Even brief touching of a child's shoulder qualifies as annoying conduct under the actus reus requirement of § 647.6(a). *See In re Hudson*, 143 Cal. App. 4th 1, 5 (2006) (placing hand on child's shoulder while he played video game); *see also People v. McFarland*, 78 Cal. App. 4th 489, 492 (2000) (stroking child's arm and face in laundromat). In fact, no actual touching is required. *See* Cal. Jur. Instr. (Crim.) § 16.440. For example, photographing children in public places with no focus on sexual parts of the body satisfies the actus reus element of § 647.6(a), so long as the manner of photographing is objectively "annoying." *People v. Dunford*, No. D039720, 2003 WL 1275417, at *4 (Cal. Ct. App. Mar. 19, 2003) (rejecting argument that "the defendant's conduct" must "be sexual" in nature). "[H]and and facial gestures" or "[w]ords alone" also satisfy the actus reus of § 647.6(a). *Pallares-Galan*, 359 F.3d at 1101 (internal quotation marks and emphasis omitted). Words need not be lewd or obscene so long as they, or the manner in which they are spoken, are objectively irritating to someone under the age of eighteen. *People v. Thompson*, 206 Cal. App. 3d 459, 465 (1988). Moreover, "[i]t is not necessary that the act[s or conduct] actually disturb or irritate the child . . . ." Cal. Jur. Instr. (Crim.) § 16.440. That is, the actus reus component of § 647.6(a) does "not necessarily require harm or injury, whether psychological or physical." *United States v. Baza-Martinez*, 464 F.3d 1010, 1015 (9th Cir. 2006). In short, § 647.6(a) is an annoying photograph away from a thought crime.

Judge Bybee, dissenting in this case, complains that we have "suggest[ed] that a crime cannot involve moral turpitude

unless the actus reus results in some sort of injury to the victim." Dissent at 4350. We have suggested nothing of the sort. We simply observe that the actus reus component of § 647.6(a) is satisfied by relatively minor conduct.

Having examined the actus reus requirement of § 647.6(a), we turn to the question of whether the relatively non-culpable acts proscribed by § 647.6(a) become morally turpitudinous when considered together with the statute's mens rea requirement. We note, as an initial matter, that we are aware of no cases outside of the fraud context in which this court has held that a non-serious crime falls within the moral turpitude category solely by virtue of its mens rea element. *See Rodriguez-Herrera*, 52 F.3d at 240 ("[W]e have not held that if a statute requires evil intent, it necessarily involves moral turpitude. We have held only that *without* an evil intent, a statute does *not* necessarily involve moral turpitude." (emphases in original)). "[O]utside of the fraud context, the bare presence of some degree of evil intent is not enough to convert a crime that is not serious into one of moral turpitude," and even in the case of fraud, evil intent is "necessary, but not sufficient, for a crime inevitably to involve moral turpitude." *Id.* at 241.

**[6]** The mens rea requirement, like the actus reus requirement, does not pose a particularly high hurdle to conviction under § 647.6(a). By judicial construction, § 647.6(a) has been interpreted to apply only to conduct that is "motivated by an unnatural or abnormal sexual interest or intent." *In re Gladys R.*, 1 Cal. 3d 855, 867 (1970) (confirming interpretation of *People v. Pallares*, 112 Cal. App. 2d 895, 901 (1952)). As construed by the California courts, this "unnatural or abnormal sexual interest" requirement is not very demanding. To be convicted under § 647.6(a), the defendant need not possess a specific intent to commit any crime, sexual or otherwise, against the child. *See People v. Maurer*, 32 Cal. App. 4th 1121, 1126-27 (1995) (noting that § 647.6(a) is a "strange beast" because despite the motivation requirement, "no specific intent is prescribed as an element of this particular

offense" (internal quotation marks omitted)). Rather, the unnatural or abnormal nature of a defendant's sexual interest under § 647.6(a) may be shown by the mere fact that the subject of the interest was underage. That is, a sexual interest that would be natural and normal if motivated by conduct directed at an 18-year old becomes unnatural or abnormal under § 647.6(a) if directed at someone who is underage. For example, in *People v. Villareal*, No. B16161735, 2003 WL 21153430 (Cal. Ct. App. May 20, 2003), described in greater detail below, the Court of Appeal affirmed the conviction of a defendant who made suggestive comments and offered a ride to an underage girl. Likewise, in *Dunford*, the Court of Appeal affirmed the conviction of a defendant who took non-sexually-explicit photographs of non-sexual parts of the bodies of two fully clothed underage girls "in an annoying manner and with a sexual motivation." 2003 WL 1275417, at *4; *see also People v. Thompson*, 206 Cal. App. 3d 459, 466 n.3 (1988) (affirming a conviction on several grounds, noting, "His sexual interest was also made clear by his own admission that he had been 'admiring' the [underage] girl's legs").

Judge Bybee maintains that § 647.6(a) requires proof of a "predatory" sexual interest. Dissent at 4358. He supports this contention by citing various formal statements of the "unnatural or abnormal sexual interest" requirement. *Id.* at 4358. As the cited statements make clear, however, it is Judge Bybee who has supplied the word "predatory." That word does not appear in § 647.6(a); nor does it appear in California courts' recitations of the elements of § 647.6(a).

**[7]** As part of its case-in-chief, the prosecution in a § 647.6(a) case may prove mens rea merely by showing that the subject of an otherwise natural sexual interest was under eighteen. *See* Cal. Jur. Instr. § 16.440. The defendant may raise his lack of knowledge of the victim's age as a defense. But a defendant with a good faith but "unreasonable" mistaken belief that the victim is eighteen or older still satisfies the mens rea requirement of § 647.6(a). *People v. Magpuso*,

23 Cal. App. 4th 112, 115 (1994); *People v. Atchison*, 22 Cal. 3d 181, 183-84 (1978) (Clark, J., concurring and dissenting); *see also Thompson*, 206 Cal. App. 3d at 466 n.3. In other words, a defendant may be convicted under § 647.6(a) if he is merely negligent in believing that the victim is eighteen or older. *See People v. Rippberger*, 231 Cal. App. 3d 1667, 1682 (1991) ("As long as the trier of fact determines that the defendant was *unreasonable* in [his or her] belief," "[c]riminal negligence may be found even when a defendant acts with a sincere good faith belief that his or her actions pose no risk." (emphasis in original)). Thus, under California law, a defendant may be found to have manifested an "unnatural or abnormal sexual interest," and thereby have satisfied the mens rea requirement of § 647.6(a), solely because he possessed an otherwise natural and normal interest in an underage person whom he negligently believed to be eighteen.

**[8]** Based on the combination of § 647.6(a)'s actus reus and mens rea requirements, we conclude that the statute, considered in the abstract, encompasses behavior that is not morally turpitudinous. Judge Bybee complains that we have reached this conclusion by employing a "novel test" that "divid[es] the offense into decontextualized actus reus and mens rea components." Dissent at 4349. But we have done just the opposite. It is clear that a statute's actus reus and mens rea requirements must be considered together. As we state above, "A crime with trivial consequences does not necessarily involve moral turpitude just because it requires the defendant to act with criminal intent. Conversely, an offense with serious consequences may involve moral turpitude even if the defendant acts only recklessly when committing it." *Supra,* at 4320. We fail to see how assessing the culpability of a crime by considering its actus reus and mens rea together constitutes a "novel test."

In fact, it is Judge Bybee's failure to consider the actus reus and mens rea requirements together that prevents him from recognizing the distinction between a violation of § 647.6(a)

and the crimes we have previously held to be morally turpitudinous. For example, Judge Bybee complains that "[u]nder the majority's mens rea analysis, it is doubtful that any statute criminalizing behavior directed at children would qualify as a crime of moral turpitude so long as it did not provide for a good faith mistake-of-age defense." Dissent at 4353. As Judge Bybee notes, and we agree, crimes such as statutory rape and carnal knowledge of a minor, which allow no good faith mistake-of-age defense, may categorically involve moral turpitude. Dissent at 4344. The only way Judge Bybee could fail to see the difference between these crimes and a conviction under § 647.6(a) is by focusing solely on their mens rea requirements, and ignoring their actus reus requirements. As should be clear to Judge Bybee, statutory rape and carnal knowledge of a minor are more culpable than the conduct prohibited by § 647.6(a) because the former involve sexual intercourse with a child, a deeply offensive actus reus, while the latter involves only "conduct a normal person would unhesitatingly be irritated by." *Lopez*, 19 Cal. 4th at 289 (internal quotation marks omitted).

Judge Bybee makes the same mistake when he argues that child abuse, which "is a crime involving moral turpitude only because of the age of the victim," "could not survive the majority's rigorous mens rea requirement" without allowing a good faith mistake-of-age defense. Dissent at 4354 n.6. For the same reason that we have no difficulty distinguishing between sexual intercourse with a child and conduct prohibited by § 647.6(a), we have no difficulty distinguishing between child abuse and assault of an adult. Although both crimes involve the same mens rea, the actus reus of assaulting a child is obviously more culpable than the act of assaulting an adult.

Judge Bybee's failure to recognize that moral turpitude depends on the combination of actus reus and mens rea is also responsible for his mistaken assertion that the present case is controlled by *Morales v. Gonzales*, 478 F.3d 972 (9th Cir.

2007). *See* Dissent at 4351-52. In *Morales*, we held that a Washington statute prohibiting "communicat[ion] with a minor for immoral purposes" was categorically a crime of moral turpitude. *Morales*, 478 F.3 at 978 (citing Wash. Rev. Code § 9.68A.090). But just as statutory rape involves a more culpable actus reus than § 647.6(a), § 9.68A.090 requires a more culpable mens rea. This is so for two reasons.

First, § 9.68A.090 requires that the communication with a minor be for "immoral purposes." *See Morales*, 478 F.3d at 978 ("[I]mmorality is one of the elements of the crime under Washington law."). The Washington courts have indicated that to be "immoral," a communication must be designed to "promot[e] a minor's exposure and involvement in 'sexual misconduct.' " *State v. Hosier*, 157 Wash. 2d 1, 11-12 (2006). For example, in *Hosier*, 157 Wash. 2d at 14, the Washington Supreme Court noted that the defendant had placed pink underpants on a fence with the "overall intent . . . to convince a young girl to take off her underpants to engage in sexual misconduct." Further, the Court noted that the defendant did not dispute that he wrote notes to the 13-year-old girl with the "purpose of promoting a minor's exposure and involvement in sexual misconduct." *Id.* at 11-12 (internal quotation marks omitted). By contrast, there is no requirement under § 647.6(a) that the defendant have such a purpose. For example, the defendant in *Dunford* was convicted under § 647.6(a) based on his taking pictures of fully clothed children in a public place, focusing on non-sexual parts of their bodies, with no showing that he intended to expose the children to, or involve them in, sexual misconduct. 2003 WL 1275417, at *4. Judge Bybee simply fails to recognize the distinction between promoting a child's involvement in sexual misconduct, as in § 9.68A.090, and annoying a child by objectively non-sexual conduct while holding an unarticulated private sexual interest, as in § 647.6(a). *See* Dissent at 4356 n.8.

Second, § 9.68A.090 requires that the defendant act with specific criminal intent. *See Hosier*, 157 Wash. 2d at 15; *State*

*v. Montoya*, 115 Wash. App. 1050, No. 28017-5-II, 2003 WL 464075, at *2 (Feb. 25, 2003) (explaining what evidence of "[s]pecific criminal intent" is sufficient to support a § 9.68A.090 conviction). By contrast, § 647.6(a) does not require specific intent. *Maurer*, 32 Cal. App. 4th at 1126-27.

We find these distinctions significant. To be convicted under § 9.68A.090, a defendant must intend to engage a minor in sexual misconduct and must do so with full knowledge that the victim is underage. To be convicted under § 647.6(a), a defendant need do neither. Judge Bybee emphasizes that § 9.68A.090, like § 647.6(a), does not require actual harm to the child and suggests that we are therefore unable to distinguish this case from *Morales*. Dissent at 4356 n.8; *see also* Dissent at 4351 n.4 ("[T]he majority provides no explanation why, after *Morales*, we should place any weight on the absence of a physical-contact element in determining whether violation of § 647.6(a) involves moral turpitude."). Judge Bybee has again considered actus reus and mens rea separately rather than in combination. Although § 9.68A.090, like § 647.6(a), does not require actual harm to a child, it requires a significantly more culpable mens rea than does § 647.6(a).

Under the California case law just described, an 18-year-old man's sexual interest in a girl one day short of her eighteenth birthday, whom the man negligently believes to be over eighteen, manifested only by annoying behavior such as photographing nonsexual parts of her fully clothed body, could support a conviction under § 647.6(a). We would not hold such behavior morally turpitudinous. Until a short time ago, the possibility of a conviction on such facts would have been enough, under the categorical approach, for us to hold that a defendant convicted of violating § 647.6(a) did not commit a crime of moral turpitude.

**[9]** However, after this case was briefed and submitted for decision, the Supreme Court decided *Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815 (2007). The petitioner in *Duenas-*

*Alvarez* was a legal permanent resident who claimed that he was not removable because his conviction was not a "theft offense" under the INA. *Id.* at 818. The Court rejected this claim after applying the categorical approach first articulated in *Taylor*. *Id.* The Court went through the familiar steps of identifying the generic definition of theft and comparing it to the California law under which Duenas-Alvarez had been convicted. *Id.* at 820-21. But then the Court wrote:

> [I]n our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. *It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime*. To show that realistic possibility, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Id.* at 822 (emphasis added).

The full implications of the Court's "realistic probability" test are, at this point, unclear. In the more than a decade and a half since the Court decided *Taylor*, this court and others have developed a substantial body of case law deciding whether various state criminal statutes fall within the scope of the "crime involving moral turpitude" offense. This case law has brought some measure of predictability to the law despite the vagaries of the phrase "moral turpitude." The same is true of many other state criminal statutes with respect to the various crimes that may constitute "aggravated felonies" under both immigration and sentencing law. In much of this case law, we have relied on the "application of legal imagination to a state statute's language" to determine the range of con-

duct that might be successfully prosecuted under it. By disapproving of such an approach, *Duenas-Alvarez* leaves uncertain the continued validity of this extensive case law.

The Court in *Duenas-Alvarez* also leaves unaddressed important issues about how courts are to decide whether the "realistic probability" showing has been made. We mention only two such issues here.

First, it is unclear who bears the burden of demonstrating a "realistic probability" that conduct reached by a statute falls within the scope of a "crime involving moral turpitude." The Court's opinion in *Duenas-Alvarez* could be read to suggest that it was incumbent on the petitioner to make this showing. *Id.* But in a removal proceeding such as the case now before us, it is the government that bears the burden of proving removability by "clear, unequivocal, and convincing evidence." *Notash*, 427 F.3d at 697 (internal quotation marks omitted).

Second, the opinion fails to specify what type of evidence may be used to satisfy the "realistic probability" requirement. A sufficient showing under *Duenas-Alvarez* might be based on factual evidence of actual convictions, on unpublished and nonprecedential opinions, on statutory language and the logic of published opinions, or on some combination thereof. This evidentiary issue is likely to arise in many forms, and we note that in immigration proceedings some of the ordinary evidentiary rules do not apply. *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 681 (9th Cir. 2005).

Whatever the practicalities of demonstrating a conviction through factual evidence, however, it cannot be that the presence of a "realistic probability" under *Duenas-Alvarez* depends on whether a conviction is described in an unpublished rather than a published opinion. *But see* Dissent at 4357, 4361-64 (complaining that we rely on an unpublished opinion in applying *Duenas-Alvarez*). In determining the

actual application of a statute, a conviction is a conviction, regardless of the manner in which it is reported. We trust that if a client sought advice regarding the scope of a state statute, Judge Bybee would not advise the client to engage in conduct that had already been held illegal simply because the conviction was reported in an unpublished opinion.

**[10]** Similarly, we do not believe that the categorical approach after *Duenas-Alvarez* is satisfied only when a state repeatedly applies a statute to non-turpitudinous conduct. *But see* Dissent at 4363 ("[I]t is unwise to rely on a single unpublished decision."). *Duenas-Alvarez*'s "realistic probability" requirement eliminated the application of "legal imagination" in defining the outer reaches of a state law. But it did not alter the fundamental logic of the categorical approach, which looks to "whether the *full range of conduct* encompassed by the statute constitutes a crime of moral turpitude." *Cuevas-Gaspar*, 430 F.3d at 1017 (emphasis added). To suggest that a state law does not apply to conduct involving moral turpitude unless it is regularly applied to non-turpitudinous conduct would not only bring an end to the "categorical" approach, but would also require an entirely unmanageable standard. *See Duenas-Alvarez*, 127 S. Ct. at 822 (noting that a defendant may show a "realistic probability" that a state would apply its statute to conduct outside the generic definition of a crime simply by pointing to "his own case").

## ii.   Application of *Duenas-Alvarez*

**[11]** Although the "reasonable probability" requirement of *Duenas-Alvarez* may be satisfied in a variety of ways, it is clear that an alien has not been convicted of a crime involving moral turpitude if he can "point to his own case or other cases in which the state courts in fact did apply the statute" to non-turpitudinous conduct. *Duenas-Alvarez*, 127 S. Ct. at 822. One unpublished opinion by the California Court of Appeal provides a detailed description of factual circumstances that supported an actual conviction under § 647.6(a). Based on

this conviction, I believe there is "a realistic probability, not a theoretical possibility, that the State would apply [§ 647.6(a)] to conduct that falls outside the generic definition [of a 'crime involving moral turpitude']." *Duenas-Alvarez*, 127 S. Ct. at 822.

The case is *People v. Villareal*, 2003 WL 21153430. A 13-year-old girl was walking along "a quiet, somewhat isolated street" in Lompoc, a small town in California, to catch a bus to soccer practice. *Id.* at *1. The defendant stopped his pickup truck across the street from her and asked the girl her name. *Id.* After she told him, he asked her if "she had gone 'to see the flag.' " *Id.* The flag was a "display of flowers planted to resemble a flag," which could be viewed from a place "known as 'make-out point' " not far from the street. *Id.* at *1 & n.2. The girl responded that she had gone to see the flag. The defendant then told her, "Well, when I look at you I see stars." *Id.* at *1. The girl "thought the comment was inappropriately sexual and that [the defendant] was smirking at her. *Id.* She felt scared and violated . . . ." *Id.* The girl "began to walk and then to run away from [the defendant] toward the bus stop." *Id.* The defendant followed her in his truck and asked her if she needed a ride. *Id.* "She said no and kept running. He continued to follow her for a short distance and then turned a corner," and drove away. *Id.* The foregoing was the full extent of the defendant's interaction with the girl.

As luck would have it, the girl was the daughter of a Lompoc police officer. *Id.* After being informed by her daughter of what had happened, the police officer searched for, and apprehended, the defendant. *Id.* When he was apprehended, the defendant stated that he thought the victim was "a 'cute girl' and that she was 16 or 17 years old. . . . Now that he knew [her] age, [he] agreed that his comment about seeing stars was 'kind of inappropriate, being that it was kind of strange.' He denied having any sexual intent in speaking to [the girl]." *Id.* The defendant further stated that he had been diagnosed with schizophrenia but had quit taking his medica-

tion before the incident on the advice of "his mental health workers." *Id.*

On this evidence, the California Court of Appeal concluded:

> Appellant stopped to talk to a 13-year old girl who was walking alone on an isolated street. His references to a local "make out" spot and to seeing stars when he looked at [the girl] would be irritating to a normal person and demonstrate that the conversation was motivated by appellant's sexual interest in [the girl]. (*People v. Maurer*, . . . , 32 Cal. App. 4th at p. 1127, 38 Cal. Rptr. 2d 335 [mental state required to violate § 647.6 is conduct motivated by unnatural or abnormal sexual interest].) The child believed that appellant's comments were sexual in nature and testified that he was "smirking" at her. Even if the initial comments were ambiguous, appellant followed [the girl] down the street as she ran away from him and asked her if she needed a ride. This conduct unquestionably would irritate a normal person. . . . Finally, appellant confirmed the sexual nature of his conduct when he told Sgt. Strange that he thought [the girl] was a "cute girl[.]"

*Id.* at *2 (bracketed phrase "[the girl]" added to replace the girl's name; other brackets in original; internal citations omitted). On this basis, the court affirmed the defendant's conviction under § 647.6(a).

The Court of Appeal's decision in *Villareal* is, of course, a proper holding that Villareal violated § 647.6(a). But the issue is not whether Villareal's conduct violated § 647.6(a), which it clearly did. The issue is whether that conduct was morally turpitudinous. I do not believe that Villareal's conduct constituted a "grave act[ ] of baseness or depravity." *Carty*, 395 F.3d at 1083. Nor, in my view, did it constitute

"conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and man, either one's fellow man or society in general." *Matter of Short*, 20 I. & N. Dec. at 139.

Judge Bybee objects to this analysis of *Villareal* because that case involved the revocation of probation, and "the standard of proof was [therefore] lower than the 'beyond a reasonable doubt' standard required in a criminal trial." Dissent at 4364. For this objection to be relevant, the behavior covered by a statute would have to vary depending on the standard of proof applied. To state this proposition is to refute it.

**[12]** Judge Bybee further objects that we have offered a "sterile retelling" of the facts in *Villareal*. He would hold that, because "the trier of fact determined that Villareal engaged in offensive behavior that was motivated by unnatural or abnormal sexual interest in the victim," Villareal's conduct involved moral turpitude. Dissent at 4363. Judge Bybee has once again assumed that, because the formal elements of § 647.6(a) *sound* morally turpitudinous, a conviction may only be had under the statute for morally turpitudinous conduct. As we have explained above, and as *Villareal* confirms, the actual application of § 647.6(a) by California courts shows that mere annoying behavior, motivated by a sexual interest that would not be abnormal if directed at an adult, may be deemed a violation of § 647.6(a) if directed at a person who is underage.

Yet, based on his erroneous interpretation of § 647.6(a) as requiring a "predatory" sexual interest, Judge Bybee argues that, because the trier of fact found a violation of § 647.6(a) in *Villareal*, it *must* have found that the conduct in *Villareal* manifested a predatory sexual interest. *Id.* At best, his argument is circular. At worst, it manifests a lack of fidelity to the record, with Judge Bybee treating his own speculations as if they were established facts. *See id.* (referring to *Villareal* as

"a story of a prelude to a rape"). To avoid any possibility of confusion as to what Villareal did (and did not) do, I attach the full report of the Court of Appeal's decision. *Infra*, *app. A*.

### iii.   Conclusion

**[13]** After examining the elements of § 647.6(a), as set forth in the statute and as construed by California courts, we conclude that there is a "realistic probability, not a theoretical possibility," that a misdemeanor conviction under § 647.6(a) can be based on behavior that, while criminal, does not rise to the level of a "crime involving moral turpitude" within the meaning of 8 U.S.C. § 1227(a)(2)(A)(i)(I).

### b.   Modified Categorical Approach

Because § 647.6(a) prohibits conduct that may not necessarily involve moral turpitude, we turn to the modified categorical approach to determine if Nicanor-Romero's actual offense involved moral turpitude. We "look beyond the language of the statute to a narrow, specified set of documents that are part of the record of conviction, including the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings." *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004) (internal quotation mark omitted). We do not look beyond such documents, however, to determine what particular underlying facts might have supported Nicanor-Romero's conviction. *Id.* Under the modified categorical approach, the government must show by clear and convincing evidence that the actual crime committed by Nicanor-Romero was a "crime involving moral turpitude." *See Notash*, 427 F.3d at 697.

**[14]** The relevant documents tell us little about what Nicanor-Romero actually did. Both the criminal complaint and the jury verdict sheet simply recite the elements of the crime described in § 647.6(a). Nicanor-Romero was also con-

victed of battery, but the record does not tell us in what way the battery may have been related to his § 647.6(a) conviction. "Inferences . . . are insufficient under the modified categorical approach." *Cisneros-Perez v. Gonzales*, 451 F.3d 1053, 1059 (9th Cir. 2006). The fact that Nicanor-Romero had to register as a sex offender gives us no information beyond the bare fact of a conviction under § 647.6(a), because registration is automatically required for everyone convicted of a § 647.6(a) violation. *See* Cal. Penal Code § 290(a)(2)(A). In short, the modified categorical approach does not allow us to determine with the requisite degree of certainty that the actual offense committed by Nicanor-Romero was a "crime involving moral turpitude."

## Conclusion

**[15]** We conclude that the government has failed to show that Nicanor-Romero committed either an aggravated felony or a crime involving moral turpitude. We therefore grant the petition and vacate the order of removal.

Petition GRANTED; order of removal VACATED.

# Appendix A



Not Reported in Cal.Rptr.2d                                Page 1
Not Reported in Cal.Rptr.2d, 2003 WL 21153430 (Cal.App. 2 Dist.)
**(Cite as: Not Reported in Cal.Rptr.2d, 2003 WL 21153430)**

People v. Villareal
Cal.App. 2 Dist.,2003.
Only the Westlaw citation is currently available.

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

Court of Appeal, Second District, Division 6, California.
The PEOPLE, Plaintiff and Respondent,
v.
Mario VILLAREAL, Defendant and Appellant.
**2d Crim. No. B161735.**
**(Santa Barbara County Super. Ct. Nos. 1030734, 1031182).**

May 20, 2003.

**Background:** Defendant appealed decision of the Superior Court, Santa Barbara County, Nos. 1030734 and 1031182,Rick Brown, J., revoking his felony probation in two cases.

**Holding:** The Court of Appeal, Yegan, J., held that evidence was sufficient to show that defendant violated statute prohibiting annoying or molesting child under age of 18.
Affirmed.

West Headnotes

**Sentencing and Punishment 350H ⟶2021**

350H Sentencing and Punishment
  350HIX Probation and Related Dispositions
    350HIX(I) Revocation
      350HIX(I)3 Proceedings
        350Hk2015 Evidence
          350Hk2021 k. Sufficiency. Most
Cited Cases

Evidence was sufficient to show defendant violated his felony probation in other cases by violating statute prohibiting annoying or molesting child under age of 18; defendant stopped to talk to 13-year-old girl who was walking alone on isolated street and referred to local "make out" spot and to seeing stars when he looked at girl, girl believed that defendant's comments were sexual in nature and that he was "smirking" at her, defendant followed girl down street as she ran away from him and asked her if she needed ride, and defendant confirmed sexual nature of his conduct when he told police officer that he though girl was cute. West's Ann.Cal.Penal Code § 647.6, subd. (a).

Superior Court County of Santa Barbara, Rick Brown, Judge.
Gilbert W. Lentz, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Kenneth N. Sokoler, Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.
YEGAN, J.
*1 Mario Villareal appeals from the judgment revoking his felony probation in two cases based on a finding that he violated Penal Code section 647.6, subdivision (a) by annoying or molesting a child under the age of 18.[FN1] The trial court imposed a two-year prison sentence, suspending all but 270 days that appellant was ordered to serve in county jail. Appellant contends the evidence is insufficient to prove that he violated section 647.6. We affirm.

> FN1. All statutory references are to the Penal Code unless otherwise stated.

*Facts*

In July 2002, 13-year old Whitney L. was walking along a quiet, somewhat isolated street in Lompoc to catch a bus to soccer practice. Appellant stopped his pickup truck across the street from Whitney and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.2d
Not Reported in Cal.Rptr.2d, 2003 WL 21153430 (Cal.App. 2 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d, 2003 WL 21153430)

Page 2

asked for her name. She told him. He asked Whitney where she was going and she answered. Appellant asked if she had gone "to see the flag."[FN2]She said she had. Appellant told Whitney, "Well, when I look at you I see stars."Whitney thought the comment was inappropriately sexual and that appellant was smirking at her. She felt scared and violated, so she began to walk and then to run away from appellant toward the bus stop. Appellant followed her in his truck. He asked if she needed a ride. She said no and kept running. He continued to follow her for a short distance and then turned a corner.

> FN2. This is a reference to a display of flowers planted to resemble a flag. Residents of Lompoc commonly view the flower flag from a remote area known as "make-out point," not far from the street on which appellant encountered Whitney.

Whitney telephoned her mother, Tammy Clancy, who is a Lompoc police officer. The two drove in Officer Clancy's patrol car, searching for appellant. When they came upon him driving in his truck, appellant put his hand out of the window, as if to waive at them. Officer Clancy was about to stop the truck when appellant pulled over, parking on the street in front of his residence. Officer Clancy asked appellant what business he had with her daughter. Appellant answered, "You can't regulate what I say to a young lady."He started to become angry and said, "You people seem to think you can control what I say and who I say it to."Officer Clancy's supervisor, Sergeant Strange, arrived and eventually arrested appellant. In a later interview, appellant admitted that he made the comment about seeing stars. Appellant said he thought Whitney was a "cute girl" and that she was 16 or 17 years old.

Appellant testified at the probation violation hearing that he was driving to see the flower flag when he saw Whitney walking down the street, "and there was like a glimmering around her like an aura of some sort. I see things sometimes. And so it made me excited and that's why I stopped."Now

that he knew Whitney's age, appellant agreed that his comment about seeing stars was "kind of inappropriate, being that it was kind of strange."He denied having any sexual intent in speaking to Whitney. "I remember I felt happy about it, that I had seen that and it seemed kind of special and I was happy. I didn't have any sexual intent at all. I was just making a statement of fact from my point of view."Appellant told the court he had been diagnosed with schizophrenia in 2000 and took medication for about one year. He stopped taking his medication before the conversation with Whitney, because his mental heath workers told him he no longer needed it.

*Discussion*

**\*2** Before revoking appellant's probation, the trial court was required to find, by a preponderance of the evidence, that he violated section 647.6, subdivision (a). (*People v. Rodriguez* (1990) 51 Cal.3d 437, 272 Cal.Rptr. 613, 795 P.2d 783.) Appellant contends the evidence is insufficient to support that finding.

Section 647.6, subdivision (a) provides that it is a misdemeanor to annoy or molest a child under the age of 18. This statute does not require proof that appellant touched Whitney, but it does require "(1) conduct a ' "normal person would unhesitatingly be irritated by" ' (*People v. Carskaddon* (1957) 49 Cal.2d 423, 426 [318 P.2d 4], quoting *People v. McNair* (1955) 130 Cal.App.2d 696, 698 [279 P.2d 800] ), and (2) conduct ' "motivated by an unnatural or abnormal sexual interest" ' in the victim (*People v. Maurer* (1995) 32 Cal.App.4th 1121, 1127 [38 Cal.Rptr.2d 335], italics omitted, quoting *In re Gladys R.* (1970) 1 Cal.3d 855, 867-868 [83 Cal.Rptr. 671, 464 P.2d 127] )." (*People v. Lopez* (1998) 19 Cal.4th 282, 289, 79 Cal.Rptr.2d 195, 965 P.2d 713.)

Here there is sufficient evidence from which the trial court could find that appellant violated section 647.6. Appellant stopped to talk to a 13-year old

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.2d                          Page 3
Not Reported in Cal.Rptr.2d, 2003 WL 21153430 (Cal.App. 2 Dist.)
(Cite as: Not Reported in Cal.Rptr.2d, 2003 WL 21153430)

girl who was walking alone on an isolated street. His references to a local "make out" spot and to seeing stars when he looked at Whitney would be irritating to a normal person and demonstrate that the conversation was motivated by appellant's sexual interest in Whitney. (*People v. Maurer, supra, 32* Cal.App.4th at p. 1127, 38 Cal.Rptr.2d 335 [mental state required to violate § 647 .6 is conduct motivated by unnatural or abnormal sexual interest].) The child believed that appellant's comments were sexual in nature and testified that he was "smirking" at her. Even if the initial comments were ambiguous, appellant followed Whitney down the street as she ran away from him and asked her if she needed a ride. This conduct unquestionably would irritate a normal person. (*People v. Kongs* (1994) 30 Cal.App.4th 1741, 1749, 37 Cal.Rptr.2d 327;*People v. Thompson* (1988) 206 Cal.App.3d 459, 467, 253 Cal.Rptr. 564.) Finally, appellant confirmed the sexual nature of his conduct when he told Sgt. Strange that he thought Whitney was a "cute girl[.]"

The judgment (order revoking probation) is affirmed.

We concur: GILBERT, P.J., and PERREN, J.
Cal.App. 2 Dist.,2003.
People v. Villareal
Not Reported in Cal.Rptr.2d, 2003 WL 21153430 (Cal.App. 2 Dist.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PREGERSON, Circuit Judge, specially concurring:

Our decision in this case is constrained by a meager record. All the record tells us is that Nicanor-Romero was convicted of violating § 647.6(a), a broadly written statute that provides, "Every person who annoys or molests any child under the age of 18 shall be punished by a fine . . . by imprisonment in a county jail not exceeding one year, or by both fine and imprisonment." Cal. Pen. Code § 647.6(a) (West 2005). We also know that Nicanor-Romero was sentenced to 163-days in prison and was ordered to register as a sex offender. But the record does not tell us what Nicanor-Romero actually did to violate § 647.6(a). In fact, we have no knowledge of the factual circumstances that led to Nicanor-Romero's misdemeanor conviction under § 647.6(a).

Like Judge Fletcher, I conclude that there is a "realistic probability, not a theoretical possibility," that a misdemeanor conviction under § 647.6(a) can be based on behavior that, while criminal, does not rise to the level of a "crime involving moral turpitude" within the meaning of 8 U.S.C. § 1227(a)(2)(A)(i)(I). Section 647.6(a) encompasses behavior that is not morally turpitudinous and, consequently, I cannot conclude, given the meager record before us, that Nicanor-Romero's violation of § 647.6(a) is a crime involving moral turpitude. I therefore join Judge Fletcher in refusing to hold that every violation of § 647.6(a) constitutes a crime of moral turpitude regardless of its factual circumstances.

I disagree, however, with Judge Fletcher's reliance on *People v. Villareal*, 2003 WL 21153430 (Cal. Ct. App. May 20, 2003). In that case, Villareal, who was driving a pick-up truck, "stopped to talk to a 13-year old girl who was walking alone on an isolated street." *Id.* at * 2. "[M]otivated by [his] sexual interest" in the young girl, Villareal referred to "a local 'make out' spot and to seeing stars." *Id.* The girl believed these comments "were sexual in nature" and noted that Villareal was "smirking" at her. *Id.* She felt "scared and violated."

*Id.* at \* 1. She began to walk and then to run away. *Id.* Villareal followed her in his pick-up truck, even after she refused his offer to give her a ride. *Id.* He then turned the corner and drove away. *Id.* I am firmly convinced that Villareal's actions constituted a crime of moral turpitude. His behavior was indeed the sort of "conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and man, either one's fellow man or society in general." *Matter of Short*, 20 I. & N. Dec. 136, 139 (BIA 1989).

Without relying on *Villareal*, I reject the dissent's suggestion that a violation of § 647.6(a) is per se a crime of moral turpitude. Accordingly, I join Judge Fletcher in granting the petition and vacating the order of removal.

---

BYBEE, Circuit Judge, dissenting:

California Penal Code § 647.6(a) punishes objectively offensive behavior toward children that is motivated by an unnatural or abnormal sexual interest. The majority holds that violation of § 647.6(a) is not, categorically, a crime involving moral turpitude. The majority accomplishes this by focusing exclusively—and separately—on the *actus reus* and *mens rea* of the offense. However, we have never subjected sexual offenses to the type of rigorous *actus reus* and *mens rea* analysis employed by the majority to determine whether they involve moral turpitude. Rather, with sex crimes we have relied on contemporary moral standards and the distinction between *malum in se* and *malum prohibitum* offenses. The majority abandons both approaches.

I agree with the majority that "[w]e have not relied on a consistent or easily applied set of criteria" to judge what constitutes a crime involving moral turpitude, and I would applaud any effort to reconcile the cases and bring clarity to

this area. Maj. Op. at 4319. However, I believe that the majority's approach renders our precedents *less* comprehensible. The majority essentially eliminates an entire category of analysis from our jurisprudence and would require us to repudiate much of our precedent involving sexual offenses against minors. In my view, the majority has not tried to reconcile our cases so much as to upend them. Furthermore, in the process, the majority recasts § 647.6(a) in a way that renders it unrecognizable to California courts. The Supreme Court warned us this last Term that we must do more than apply our "legal imagination to a state statute's language." *Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 822 (2007). No less can be said about applying our imagination to a state's caselaw.

I respectfully dissent.

## I

In this section, I first discuss how we have treated sexual offenses and then turn to how our precedent on moral turpitude applies to the California statute in question, California Penal Code § 647.6(a).

## A

"We have generally divided crimes involving moral turpitude into two basic types: 'those involving fraud and those involving grave acts of baseness or depravity.'" *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1058 (9th Cir. 2006) (quoting *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005)). Although the latter category is not well-defined, both we and our sister circuits have consistently held that sexual offenses generally fall within that category. *See Morales v. Gonzales*, 478 F.3d 972, 978 (9th Cir. 2007) (immoral communication with a minor); *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246-47 (9th Cir. 1994) (incest) (per curiam); *Schoeps v. Carmichael*, 177 F.2d 391, 394 (9th Cir. 1949) (lewd and lascivious conduct); *Bendel v. Nagle*, 17 F.2d 719, 720 (9th Cir.

1927) (statutory rape); *see also Sheikh v. Gonzales*, 427 F.3d 1077, 1082 (8th Cir. 2005) (contributing to delinquency of a minor); *Maghsoudi v. INS*, 181 F.3d 8, 14-15 (1st Cir. 1999) (indecent assault); *Palmer v. INS*, 4 F.3d 482, 485 (7th Cir. 1993) (contributing to sexual delinquency of a minor); *Castle v. INS*, 541 F.2d 1064, 1066 (4th Cir. 1976) (carnal knowledge of a minor) (per curiam); *Marciano v. INS*, 450 F.2d 1022, 1024 (8th Cir. 1971) (statutory rape); *United States v. Kiang*, 175 F. Supp. 2d 942, 951-52 (E.D. Mich. 2001) (fourth degree sexual assault).[1] Such offenses so violate contemporary moral standards that they "involve moral turpitude by their very nature." *Gonzalez-Alvarado*, 39 F.3d at 246 (internal quotation marks omitted).

Sexual offenses have consistently been classified as crimes involving moral turpitude irrespective of any injury to the victim, physical or otherwise. Sexual misconduct need not rise to the level of rape or involve physical assault to violate contemporary moral standards. In fact, to constitute a crime involving moral turpitude, the sexual misconduct need not even involve physical contact: We recently held that mere verbal communication with a minor "for immoral purposes of a sexual nature" is sufficiently contrary to American ethics to constitute a crime involving moral turpitude. *Morales*, 478 F.3d at 978.

We have also recognized that baseness and depravity inhere in offenses committed against particularly vulnerable victims, such as children or spouses. We have held, for example, that

---

[1]Although statutory rape has long been considered a crime involving moral turpitude, we recently held that California Penal Code § 261.5(d), which makes it a crime for an individual twenty-one years of age or older to engage in sexual intercourse with a minor who is under sixteen years of age, "is not categorically a crime involving moral turpitude within the meaning of the immigration statutes." *Quintero-Salazar v. Keisler*, 506 F.3d 688, 694 (9th Cir. 2007). In reaching that conclusion, however, we relied on the distinction between crimes that are *malum in se* and *malum prohibitum*, *see id.* at 693-94, an approach that the majority abandons.

both spousal abuse and child abuse are crimes involving moral turpitude, even though under California law, they are merely variations on the offense of battery—which is not itself a crime involving moral turpitude. *See* CAL. PENAL CODE § 243(e)(1) (battery against one's spouse); *Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993) (noting that spousal status makes spousal abuse a more grievous offense than assault); *Guerrero de Nodahl v. INS*, 407 F.2d 1405, 1405-07 (9th Cir. 1969) (child abuse); *Matter of Garcia-Hernandez*, 23 I & N Dec. 590, 591, 594 (BIA 2003) (noting that battery as defined in the California Penal Code is not a crime involving moral turpitude). In holding spousal abuse to be a crime involving moral turpitude, we observed that

> an adult is not as helpless of a victim as a child; nevertheless, a spouse is committed to a relationship of trust with, and may be dependent upon, the perpetrator. This relationship makes the crime of spousal abuse different from violence between strangers or acquaintances, which, depending on the wording of the statute, is not necessarily a crime of moral turpitude.

*Grageda*, 12 F.3d at 922. Our recognition that the victim's vulnerability or intimate relationship with her victimizer can render an act inherently base or vile simply reflects contemporary American mores.

Perhaps no conduct so unequivocally violates American ethics as that which encompasses both of these categories, namely sexual predation upon the most vulnerable members of our society. Children in particular—because of their naïveté, their dependence on adults, and their inability to understand, flee, or resist such advances—are vulnerable to adults who seek to take advantage of them sexually. Thus, we find such conduct especially repulsive and worthy of the severest moral opprobrium. *Cf. New York v. Ferber*, 458 U.S. 747, 757, 763 (1982) (noting that the "prevention of sexual exploi-

tation and abuse of children constitutes a government objective of surpassing importance" and holding on that basis that child pornography, unlike adult pornography, falls outside First Amendment protection). Put differently, sexual misconduct, particularly such conduct directed toward children, falls neatly into the category of crimes that are *malum in se*. Courts have long considered the distinction between *malum in se* and *malum prohibitum* crimes to be the main, if not the deciding, factor in determining whether a crime involves moral turpitude. *See, e.g.*, *Quintero-Salazar*, 506 F.3d at 694 ("Because § 261.5(d) defines conduct that is *malum prohibitum* in at least some cases, it cannot *categorically* be a crime of moral turpitude."); *Hyder v. Keisler*, 506 F.3d 388, 391 (5th Cir. 2007) ("Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se . . . ." (quoting *Hamdan v. INS*, 98 F.3d 183, 186 (5th Cir. 1996))); *Nguyen v. Chertoff*, 501 F.3d 107, 109 n.3 (2d Cir. 2007) (same); *Recio-Prado v. Gonzales*, 456 F.3d 819, 821 (8th Cir. 2006) (finding "that moral turpitude inheres in" the crime of maliciously and intentionally firing a weapon into an occupied dwelling because it was "undoubtedly malum in se"); *Padilla v. Gonzales*, 397 F.3d 1016, 1020 (7th Cir. 2005) ("We have acknowledged that the distinction between crimes that involve moral turpitude and those that don't corresponds to the distinction between crimes that are *mala in se* and those that are *mala prohibita*."); *Beltran-Tirado v. INS*, 213 F.3d 1179, 1184-85 (9th Cir. 2000) (relying on distinction between *malum prohibitum* and *malum in se* to conclude that a *malum prohibitum* crime did not involve moral turpitude); *In re Flores*, 17 I & N Dec. 225, 227 (B.I.A. 1980) (defining moral turpitude "as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude").

The reprehension with which we view such acts explains the consistent, and uncontradicted, determinations by federal courts that sexual misconduct targeting children involves

moral turpitude, even where the criminal provision requires no injury or even contact. Such conduct directed at "a minor is inherently wrong and contrary to the accepted rules of morality and the duties owed between persons." *Morales*, 478 F.3d at 978. This is so even where the defendant acted with no specific criminal intent: Because such conduct is so base and vile in and of itself, the defendant commits a crime of moral turpitude simply by willfully committing the wrongful act. *See Matter of Torres-Varela*, 23 I & N Dec. 78, 84 (BIA 2001); *Matter of Tran*, 21 I & N Dec. 291, 293 (BIA 1996) (noting that moral turpitude is present "[w]here knowing or intentional conduct is an element of a morally reprehensible offense").

B

Section 647.6(a) falls squarely within this category of sexual offenses that we have deemed to involve moral turpitude. The provision criminalizes acting with an abnormal sexual intent so as to "annoy[ ] or molest[ ] any child under 18 years of age." One can be convicted of violating § 647.6(a) only by committing "an act that is objectively and unhesitatingly viewed as irritating or disturbing, prompted by an abnormal sexual interest in children." *Terry v. Davis Cmty. Church*, 33 Cal. Rptr. 3d 145, 154 n.3 (Cal. Ct. App. 2005); *accord In re Gladys R.*, 464 P.2d 127, 137 (Cal. 1970) (noting that § 647.6(a) is "narrow" and limited to offenders "motivated by unnatural or abnormal sexual interest or intent"); *People v. Maurer*, 38 Cal. Rptr. 2d 335, 338 (Cal. Ct. App. 1995) (noting that § 647.6(a) is violated only by a disturbing act "motivated by an unnatural or abnormal sexual interest or intent with respect to children" (emphasis and internal quotation marks omitted)). Acting offensively or in a way "designed to disturb, irritate, . . . injure, or at least tend to injure" a child, *People v. Lopez*, 965 P.2d 713, 717 (Cal. 1998), for the purposes of satisfying one's own "unnatural or abnormal sexual interest" or with such intent shocks the American conscience and is regarded as universally repulsive in this country. Under

our cases involving sexual offenses, the universal condemnation accorded such acts by contemporary Americans is sufficient to qualify violations of § 647.6(a) as crimes involving moral turpitude.

Section 647.6(a) applies only to a "comparatively narrow province" of conduct. *In re Gladys R.*, 464 P.2d at 137; *see also People v. Pallares*, 246 P.2d 173, 177 (Cal. Ct. App. 1952) (holding that § 647.6(a) does not prohibit mere "annoyance" of a minor). California courts take seriously the requirement that the conduct supporting a § 647.6(a) conviction be objectively offensive. *See, e.g.*, *People v. Kongs*, 37 Cal. Rptr. 2d 327, 331 (Cal. Ct. App. 1994) (holding that "the section must be construed reasonably as setting up an objective test for annoyance or molestation"). As *People v. Carskaddon*, 318 P.2d 4 (Cal. 1957), illustrates, when the conduct does not rise to that level, a conviction under § 647.6(a) will not stand. In that case, the defendant had approached two children, aged six and four, in a public park and walked a short distance with them on a sidewalk. *Id.* at 5. The court overturned the conviction, noting that the record contained no evidence of any lewd or obscene behavior on the defendant's part. *Id.* at 5-6. In other words, the defendant's conduct lacked the objectively offensive act required under the statute.

More importantly, the statute does not extend even to all offensive conduct; it reaches only offensive conduct that is motivated by an abnormal sexual interest in the child. *See, e.g.*, *Lopez*, 965 P.2d at 717. The statute targets the motivation common to sexual predators of all types, but it criminalizes only those predators who specifically direct their abnormal interests toward children under the age of 18, presumably in recognition of such children's special vulnerability to those driven by such motives. This limitation makes sense in light of the purpose of this statute, which is to protect "children from interference by sexual offenders, and the apprehension, segregation and punishment of the latter." *In re Gladys R.*, 464 P.2d at 137 (quoting *People v. Moore*, 290 P.2d 40, 41

(Cal. Ct. App. 1955)); *see also People v. Thompson*, 253 Cal. Rptr. 564, 569 (Cal. Ct. App. 1988). A desire to prey sexually on any member of our society, much less the most vulnerable members, so fundamentally offends the contemporary American moral sensibility that it unquestionably involves moral turpitude.

Finally, California itself recognizes the moral gravity of the offense. Violations of § 647.6(a) are "viewed as base, vile and depraved" and are, therefore, deemed to involve "moral turpitude." *Brewer v. Dep't of Motor Vehicles*, 155 Cal. Rptr. 643, 648 (Cal. Ct. App. 1979). The California Penal Code defines violations of § 647.6(a) as "sexual abuse," CAL. PENAL CODE § 11165.1, and perpetrators who are convicted under this provision must register as sex offenders with the State of California, CAL. PENAL CODE § 290(a)(1)(A), (a)(2)(A); *cf. Kongs*, 37 Cal. Rptr. 2d 327, 331 (Cal. Ct. App. 1994) ("For the most part, [this section] has been applied to incidents of explicit sexual conduct . . . .").

## II

Having demonstrated that § 647.6(a) falls comfortably within our standard approach to sexual offenses, I now turn to the problems attending the novel test proposed by the majority and demonstrate that it wreaks havoc on our precedent involving such offenses. The majority accomplishes this by dividing the offense into decontextualized *actus reus* and *mens rea* components. Isolating these elements from each other,[2] the majority then concludes that neither element suf-

---

[2]The majority objects that I am the one who errs by failing to consider the *mens rea* and *actus reus* in conjunction with each other. Maj. Op. at 4326-27. True, the majority purports to "consider the actus reus and mens rea requirements together," *id.* at 4326, and claims to derive its conclusion "[b]ased on the combination of § 647.6(a)'s actus reus and mens rea requirements," *id.* at 4326. But nowhere in the opinion does the majority consider the two elements together; it is always and only focused on one or the other. *See, e.g.*, *id.* at 4324 ("The mens rea requirement, like the actus reus requirement, does not pose a particularly high hurdle to conviction . . . .").

fices to render the prohibited conduct morally turpitudinous. *See* Maj. Op. 4320-27.

The majority's new analysis not only departs from our prior analysis, it does violence to the integrity of § 647.6(a). The majority does precisely what California courts have expressly refused to do: It has completely isolated the *actus reus* and *mens rea* from each other, bringing about "an unrealistic separation of motivation and acts." *Thompson*, 253 Cal. Rptr. at 568; *see also id.* ("We doubt the court [in *Carskaddon*, 318 P.2d at 4-6] intended to separate the two elements when it made its general statement about [§ 647.6(a)]."); *People v. Dunford*, 2003 WL 1275417 (Cal. Ct. App. March 19, 2003), at *6 (noting that some, but not all, photography of fully clothed children is morally offensive because it is "the motivation in combination with the perpetrator's disturbing conduct" that determines whether an act falls within the statute's scope). In the sections that follow, I explain why the majority's *actus reus*/*mens rea* analysis is artificial and why it is inconsistent with our precedents.

A

The majority suggests that a crime cannot involve moral turpitude unless the *actus reus* results in some sort of injury to the victim, whether physical or psychological; such injury, it implies, is the *sine qua non* of base or depraved conduct. *See* Maj. Op. at 4323-24. However, as I noted above, we have never required a showing of injury as a prerequisite to classifying a sexual offense as a crime involving moral turpitude, and such a requirement is simply irrelevant to determining the moral offensiveness of such acts.

The majority objects that § 647.6(a) covers non-sexual touching or behavior involving no physical contact whatsoever. Maj. Op. at 4323. This characterization of the statute's requirements is tendentious at best.[3] But even if accurate, the

---

[3]The cases cited by the majority involved touchings that were admittedly not sexual in the sense of involving contact with the victim's sexual

majority's objection simply is irrelevant given our prior approach to sexual offenses. For example, the provision at issue in our recent decision in *Morales* provided that "a person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor." WASH. REV. CODE § 9.68A.090(1), *quoted in Morales*, 478 F.3d at 978. To violate that provision, the defendant need only engage in mere verbal communication with a minor "for immoral purposes of a sexual nature." *Morales*, 428 F.3d at 978 (citing *State v. Hosier*, 133 P.3d 936, 941 (Wash. 2006)). Despite the absence of any requirement that there be physical contact, we held that mere "[s]exual communication with a minor is inherently wrong and contrary to the accepted rules of morality and the duties owed between persons." *Id.* As such, violation of the statute "categorically constitutes a crime involving moral turpitude."[4] *Id.*

---

organs, but they certainly were sexual in the sense that the contact was motivated by the defendant's sexual desire. *See, e.g.*, *In re Hudson*, 49 Cal. Rptr. 3d 74, 76-78 (Cal. Ct. App. 2006) (noting defendant's prior convictions for child molestation and his possession of child pornography); *People v. McFarland*, 92 Cal. Rptr. 2d 884, 886 (Cal. Ct. App. 2000) (noting defendant's prior lewd conduct convictions and noting the defendant's statement to the victim's mother that he "had to come see [her] beautiful children"). Again, the majority misses this precisely because of its unwarranted and entirely novel separation of the elements of the offense from each other.

[4]Our holding in *Morales* renders irrelevant the majority's objection that because gestures and words are conduct sufficient for conviction under § 647.6(a), it cannot categorically be a crime involving moral turpitude. *See* Maj. Op. at 4323 (citing *United States v. Pallares-Galan*, 359 F.3d 1088, 1101 (9th Cir. 2004)). It is true that in *Pallares-Galan*, we rejected the contention that convictions under this statute categorically constituted child abuse under the Immigration and Nationality Act because it does not require physical contact. *See* 359 F.3d at 1101. But the majority provides no explanation why, after *Morales*, we should place any weight on the absence of a physical-contact element in determining whether violation of § 647.6(a) involves moral turpitude.

The majority further objects that § 647.6(a) does not require the child to be offended by, irritated by, or even aware of the act. Maj. Op. at 4323. This objection again misses the point. After all, it is unlikely that many young children are aware of the "repulsive [ ] nature" of the act perpetrated upon them by their molesters. *Schoeps*, 177 F.2d at 394. Our revulsion at the inappropriate touching of a minor is not ameliorated if the child happens to be sleeping or is otherwise unaware of the offensive contact, and we do not view sexual communication with a minor less blameworthy if the minor fails to recognize the offensive nature of the communication. *Cf. State v. Hosier*, 103 P.3d 217, 222 (Wash. Ct. App. 2004) (noting that it would be absurd to require the minor targeted with immoral communication as defined in the statute at issue in *Morales* to be able to understand the offensive nature of the communication because that reading would "restrict the statute's application to victims sexually mature beyond their years, or [ ] omit from its reach the very victims it is intended to protect"). What is lost in the majority's analysis is the fact that we find such acts so repulsive in part because we do not expect children to be sexually aware, and because we find actions that impose such awareness on them—or take advantage of their lack of awareness—to be especially depraved. It is for precisely this reason that § 647.6(a) criminalizes acts that are *objectively* disturbing or irritating: It would be absurd to rely on the subjective feelings of a two-year-old in determining whether the act was offensive.[5]

---

[5]The requirement that the conduct be *objectively* offensive is an important qualifier, as it prevents the statute from being either over- or under-inclusive: Objectively offensive conduct does not include conduct that an over-sensitive child would find offensive, but it does include offensive conduct that a naive child would not recognize as such. *See Pallares*, 246 P.2d at 177 (noting that the objective requirement excludes "a childish and wholly unreasonable subjective annoyance"); *Carskaddon*, 318 P.2d at 5 ("Ordinarily, the annoyance or molestation which is forbidden is not concerned with the state of mind of the child but it is the objectionable acts of defendant which constitute the offense." (internal quotation marks omitted)).

B

The majority's handling of the *mens rea* element similarly upends our precedents. The majority objects that the *mens rea* for § 647.6(a) "does not pose a particularly high hurdle" for the prosecution because it provides only for a reasonable mistake-of-age defense and requires no specific intent to commit a crime. Maj. Op. at 4323-26.

The majority improperly conflates a defendant's "negligen[ce] in believing that the victim is eighteen or older" with "negligence-based crimes," which generally do not involve moral turpitude. Maj. Op. at 4325-26. A negligent assault, for example, "is unintentional, unwitting, and committed without contemplation of the risk of injury involved." *Partyka v. Att'y Gen.*, 417 F.3d 408, 414 (3d Cir. 2005). Whether a negligence-based crime is a crime involving moral turpitude bears no relation to whether a crime that would otherwise constitute a crime involving moral turpitude is subject to a negligent mistake-of-age defense. *Cf. Castle*, 541 F.2d at 1066 ("It is unnecessary for judicial or administrative officials to examine the extenuating factors which an offender [convicted for the crime of carnal knowledge of a minor] might raise in his attempt to cleanse himself of the stigma of moral obliquity where the commission of the crime itself must necessarily involve moral turpitude. The inherent nature of the offense rather than the circumstances surrounding the transgression is the determinative element."). Neither we nor any of our sister circuits have ever required the availability of such a defense in the context of sexual offenses, particularly those directed at minors.

Under the majority's *mens rea* analysis, it is doubtful that any statute criminalizing behavior directed at children would qualify as a crime of moral turpitude so long as it did not provide for a good faith mistake-of-age defense. *See* Maj. Op. at 4325-26. Even if such a defense were available, the majority's analysis calls into question whether any crime dependent on the victim's age can categorically involve moral turpitude

given the ever-present possibility that a child just below the age threshold might be sufficiently precocious that the conduct does not "shock the public conscience."[6] *Id*. at 4322; *see also id*. at 4325-26. This result would be, to put it mildly, counterintuitive: In many instances, it is the fact that the wrongful act is directed at a child that makes it especially base or vile.

### C

In sum, however appropriate the majority's approach might be for non-sexual crimes whose moral offensiveness is less clear, it is simply irreconcilable with our cases involving sexual misconduct, particularly where that misconduct is directed at minors. A brief example will illustrate this insurmountable conflict.

---

[6]The majority's approach would arguably produce the same result in cases involving convictions for child abuse, which we have categorized as a crime involving moral turpitude. *See Guerrero de Nodahl*, 407 F.2d at 1406-07. Under our precedent, simple assault is not a crime involving moral turpitude, and under the categorical approach, even assault with a deadly weapon does not constitute such a crime. *See, e.g.*, *Carr v. INS*, 86 F.3d 949, 950-51 (9th Cir. 1996); *Komarenko v. INS*, 35 F.3d 432, 435 (9th Cir. 1994); *Matter of Short*, 20 I & N Dec. 136, 139 (BIA 1989). Yet, under California law, the statute defining child abuse is essentially identical to the statute defining assault—the only difference is that the former statute requires the victim to be a child. *People v. Smith*, 678 P.2d 886, 891 (Cal. 1984) ("The elements of section 245 [assault with a deadly weapon] and the offense here [child abuse] are strikingly similar; the principal difference is that the assault prohibited by section 273a is committed on a child." (footnote omitted)); *see also People v. Valdez*, 42 P.3d 511, 517 (Cal. 2002) (noting the similarity between child abuse, assault, and assault with deadly weapon). If child abuse is a crime involving moral turpitude only because of the age of the victim, it could not survive the majority's rigorous *mens rea* requirement. After all, under the categorical approach, one would have to account for the possibility that the defendant made an "honest but unreasonable" mistake as to the victim's age, and according to the majority, the lack of such a defense would be fatal. Yet we and other circuits have held that abuse of a child violates American ethics and is therefore a crime involving moral turpitude. *See, e.g.*, *Guerrero de Nodahl*, 407 F.2d at 1406-07.

The majority's reasoning directly contradicts our recent decision in *Morales*, where we held that communication with a minor for immoral purposes under Washington law is a crime involving moral turpitude. *See* 478 F.3d at 978. The statute at issue in that case punishes communication—whether through "words or conduct"—with a minor "for immoral purposes of a sexual nature." *Id.* The Washington provision requires neither injury nor contact, and it lacks a mistake of age defense. In other words, under the majority's approach, it is indistinguishable from § 647.6(a) and should not be classified as a crime involving moral turpitude.

The conflict, however, runs deeper. Not only are the *actus reus* and *mens rea* elements of § 9.68A.090 analogous to those at issue here; the scope of conduct prohibited by both provisions is also remarkably similar. We have previously noted that much of the conduct prohibited by the Washington statute falls outside the scope of sexual abuse of a minor as we have defined it, *Parrilla v. Gonzales*, 414 F.3d 1038, 1042-43 (9th Cir. 2005) (holding that WASH. REV. CODE § 9.68A.090 does not categorically involve sexual abuse of a minor), and the Washington Supreme Court has confirmed that § 9.68A.090 broadly "prohibits communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct."[7] *State v. McNallie*, 846 P.2d 1358, 1364 (Wash. 1993). Furthermore, Washington courts have noted that the statute must apply even to communications not understood by the target, because not to apply them in such cases would defeat the very purpose of the statute by "restrict[ing] the statute's application to victims sexu-

---

[7]This broad interpretation derives in part from the legislature's declared motivation for enacting this provision: " 'The legislature finds that the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance. The care of children is a sacred trust and should not be abused by those who seek commercial gain or personal gratification based on the exploitation of children.' " *State v. McNallie*, 846 P.2d 1358, 1363 (Wash. 1993) (quoting WASH. REV. CODE § 9.68A.001).

ally mature beyond their years[ and] omit[ting] from its reach the very victims it is intended to protect." *Hosier*, 103 P.3d at 222. The prohibited conduct includes indirect communication, such as sexually explicit notes left on a minor's lawn, even where the minor has herself never seen the notes, or on the fence of a kindergarten, even though the children were unable to read. *See State v. Hosier*, 133 P.3d 936, 940-43 (Wash. 2006). It can also involve a game of truth or dare at a slumber party where the host suggested "dares" to the minors, including "(1) for a 12-year-old boy to walk next door and sexually proposition [the host's] neighbor, (2) for a boy to touch a girl's breasts, and (3) for 12-year-old girls to go outside and expose themselves." *State v. Montoya*, 2003 Wash. App. LEXIS 299, at *11 (Wash. Ct. App. Feb. 25, 2003). If, as we held in *Morales*, the conduct covered by WASH. REV. CODE § 9.68A.090 categorically involves moral turpitude, the majority is obligated to offer a plausible explanation as to how conduct prohibited by § 647.6(a) is materially distinguishable.[8]

---

[8]None of the reasons given by the majority provides a plausible basis for distinguishing these two statutes. Maj. Op. at 4327-29. First, the majority emphasizes that the communications under § 9.68A.090 have the purpose of exposing the minor to, or involving him or her in, sexual misconduct. Maj. Op. at 4327-29. It may be true that the Washington and California statutes are not coextensive on this point, but I fail to see why it is relevant. California punishes offensive conduct motivated by unnatural or abnormal sexual interest. That is surely a form of sexual misconduct directed at minors.

Second, although the specific-intent requirement does represent a material distinction between § 9.68A.090 and § 647.6(a), specific intent has never been treated as a dispositive factor in the moral turpitude inquiry, as the majority itself recognizes. *See* Maj. Op. at 4319 (citing *In re Torres-Varela*, 23 I. & N. Dec. 78, 83 (BIA 2001)).

Finally, just as in § 647.6(a), the Washington statute's "actus reus requirement does 'not necessarily require harm or injury, whether psychological or physical.' " Maj. Op. at 4323 (quoting *United States v. Baza-Martinez*, 464 F.3d 1010, 1015 (9th Cir. 2006)). Given that the majority concludes that, absent such a requirement, it cannot find that § 647.6(a) is a crime of moral turpitude, *id.*, I fail to see how it can simultaneously believe that *Morales* was properly decided and that its test properly states the law of moral turpitude.

The majority insists that it does not intend to repudiate prior decisions finding sexual misconduct to be morally turpitudinous, but the fact remains that the majority's test is novel and cannot be reconciled with our precedents involving sexual misconduct. In those cases, we have never looked either to the victim's injury, awareness, or understanding or to whether the defendant acted with specific intent; rather, we have consistently evaluated the prohibited conduct in light of contemporary American ethics and the distinction between *malum in se* and *malum prohibitum*. The majority, with no explanation, jettisons this approach and replaces it with a test that fails to account for much of what we find most offensive in sexually motivated conduct directed at children.)

## III

The majority's new, but flawed, method really comes home to roost when it analyzes California cases the majority thinks prove that we cannot employ the categorical approach. *See Duenas-Alvarez*, 127 S. Ct. at 822.

First, the majority completely misstates California law. The majority asserts: "[T]he unnatural or abnormal nature of a defendant's sexual interest under § 647.6(a) may be shown by the mere fact that the subject of the interest was underage." Maj. Op. at 4324. Then, so that there can be no misunderstanding of its position, the majority repeats its misreading of California law: "That is, a sexual interest that would be natural and normal if motivated by conduct directed at an 18-year old becomes unnatural or abnormal under § 647.6(a) if directed at someone who is underage." *Id.* With all due respect, that is *not* California law.

The majority's erroneous interpretation of the *mens rea* element derives in part from a logical error: The majority improperly infers the required *mens rea* from its understanding of the prohibited conduct, and because the conduct in some cases would not be offensive if directed toward an adult

woman, the majority reasons that the victim's age alone explains California's decision to prohibit the conduct. *This reasoning is precisely backwards.* California courts have made clear that it is the offensive conduct *plus* the predatory sexual interest that brings conduct within the scope of the statute; or stated differently, § 647.6(a) punishes those who have an unnatural or abnormal sexual interest in a child and have acted that interest out in some objectively offensive way.

The California courts could not have been more clear on this point. As the California Court of Appeal explained, § 647.6(a) punishes "an abnormal sexual interest or intent *manifested by* acts of annoyance or molestation toward children." *Brewer*, 155 Cal. Rptr. at 648 (emphasis added); *see also Lopez*, 965 P.2d at 717 (conduct must be "motivated by an unnatural or abnormal sexual interest in the victim" (internal quotation marks omitted)); *Kongs*, 37 Cal. Rptr. 2d at 331 (holding that "the acts forbidden [by the statute] are those motivated by an unnatural or abnormal sexual interest or intent with respect to children"); *Thompson*, 253 Cal. Rptr. at 568 (holding that acts must be "motivated by an abnormal or unnatural sexual interest in the child victim" to violate § 647.6(a)).[9] Correctly understood, then, a § 647.6(a) conviction requires not merely negligence with regard to the victim's age; it also necessarily involves an unnatural or abnormal sexual interest in the child victim. This predatory sexual interest is sufficiently evil to render the prohibited acts morally turpitudinous; indeed, they would be such even if directed at an adult.

Without support for its conclusion in what the California courts have said, the majority resorts to selective factual distinctions to determine what factual showing § 647.6(a)

---

[9]The California Jury Instructions confirm this interpretation of the statute. They make the victim's age an element of the *actus reus* and describe the *mens rea* simply as "motivated by an unnatural or abnormal sexual interest." C<span>AL</span>. M<span>ODEL</span> J<span>URY</span> I<span>NSTRUCTIONS</span> § 16.440.

requires for conviction. It points to three cases, two of which are unpublished decisions, and gives us its own reading of the facts. *See* Maj. Op. at 4323-26, 4332-35. I do not think the cases fall the majority's way. In *People v. Dunford*, 2003 WL 1275417 (Cal. Ct. App. March 19, 2003), for example, the California Court of Appeal upheld the conviction of a defendant who was charged with surreptitiously taking photographs of fully clothed young girls. *Id.* at *1-2. The majority thinks it obvious that no one would find it "unnatural or abnormal" for an adult man to take pictures of non-sexual parts of the body of a fully clothed adult woman. *See* Maj. Op. at 4324-25. In most cases, I would agree, but the majority's hypothetical differs markedly from the facts of *Dunford* and glosses over the mental state that brought the defendant's actions in that case within the scope of § 647.6(a). In *Dunford*, the defendant persistently followed three female children and photographed them over the course of several weeks in various locations around their neighborhood. *Dunford*, 2003 WL 1275417, at *1. Dunford had a previous conviction under § 647.6(a) for taking photos of an 11-year-old girl and three of her friends with "a camera attached to the belt loop of his pants" with "[h]is pants . . . unzipped and his penis . . . protruding." *Id.* at *2. On another occasion, the defendant had been seen "secretively photographing young girls in bathing suits" at a public swimming pool. *Id.*

Nothing in *Dunford* supports the majority's implication that Dunford's sexual interest was abnormal or unnatural *because* his victims were under the age of eighteen. Indeed, the California Court of Appeal was pellucid on this point. It stated that "[w]hether the defendant's conduct was objectively annoying is distinct from the issue of whether the defendant had an actual perverse sexual motive," because "[s]ection 647.6 is violated by conduct that would unhesitatingly irritate a normal person *and* that is motivated by an unnatural or abnormal sexual interest in the victim." *Id.* at *3. It freely acknowledged that "the act of viewing children for sexual pleasure may not, in itself, be criminal," and that "a person

photographing a scene open to the public, without more, does not violate section 647.6." *Id.* at *3-*4. The court concluded:

> Dunford's argument is premised on the erroneous belief that the conduct required under the statute must be objectively sexual. . . . [S]ection 647.6 may proscribe conduct or acts that are not themselves lewd or obscene. Rather the objectively annoying conduct must be *motivated* by an abnormal or unnatural sexual interest in the child victim. It is the motivation in combination with the perpetrator's disturbing conduct that limits the scope of the statute.

*Id.* at *6 (footnote and citations omitted). I am firmly convinced that Dunford's conduct, motivated by such an obviously predatory sexual interest, would be offensive even if directed at an adult woman, much less at three pre-pubescent girls, including one as young as six. California has chosen to punish only those with such abnormal and unnatural desires who target children. I cannot fathom how that means that § 647.6(a) does not categorically define a crime involving moral turpitude.[10]

---

[10]The majority's implication that a defendant's mental state can never render normally innocuous conduct morally offensive reflects an almost willful blindness to the danger sexual predators pose to potential victims of all ages. To take just one real-world example, the *New York Times* recently reported the controversy surrounding Jack McClellan, a self-professed pedophile who spends much of his time taking nonsexual photographs of children in public places. Jennifer Steinhauer, *Parents' Ire Grows at Pedophile's Unabashed Blog*, N.Y. TIMES, July 27, 2007, at A1. McClellan has also created websites where he has posted "nonsexual pictures of children . . . intended to promote the acceptance of pedophiles, and to direct other pedophiles to events and places where children tended to gather." *Id.* Apparently, in the majority's view, were McClellan to be convicted under § 647.6(a), the only reason for deeming his actions morally offensive would be that his subjects were underage children; his conduct would be entirely innocuous if directed at adult women, notwithstanding his predatory sexual interest in the subjects of his photography, because the photography itself is nonsexual. I cannot agree.

A second case cited by the majority, *People v. Thompson*, 253 Cal. Rptr. 564 (Cal. Ct. App. 1988), is simply irrelevant: The defendant in that case did not challenge the trial court's determination that he was motivated by an unnatural or abnormal sexual interest. Thompson followed a twelve-year old girl on a bicycle, passing her some ten times. The child was so afraid that she went to a nearby residence—someone she did not know—shaking, crying and asking for help. The resident noticed the car pass her home an additional three to four times. *Id.* at 565-66. On appeal, Thompson claimed that § 647.6 required a "lewd or obscene act." The court rejected his argument, stating that the section "only requires proof of articulable, objective acts which would cause a normal person to be unhesitatingly irritated, provided the acts are motivated by an abnormal or unnatural sexual interest in the child victim." *Id.* at 568. The court found that there was sufficient evidence that Thompson engaged in conduct that, objectively viewed, annoyed the victim. The court specifically noted that Thompson did "not challenge the sufficiency of the evidence of abnormal sexual intent" and did not address that question. *Id.* at 568. Nothing in *Thompson* supports the majority's theory.

Finally, Judge Fletcher places the greatest weight on *People v. Villareal*, 2003 WL 21153430 (Cal. Ct. App. May 20, 2003), a two-page, unpublished decision.[11] *See* Maj. Op. at 4332-36. *Villareal* arises in an unusual procedural setting.

---

[11]Judge Pregerson does not join in Judge Fletcher's reliance on *Villareal*, *see* Concurring Op. at 4341, which means that a majority of this panel believes that *Villareal* does not demonstrate "a realistic probability . . . that the State would apply its statute to conduct that falls outside the generic definition." *Duenas-Alvarez*, 127 S. Ct. at 822. Without *Villareal* or any other California case to support the majority's determination that § 647.6(a) criminalizes at least some conduct that is not morally turpitudinous, we are left simply with the majority's imaginative conjecture that "a misdemeanor conviction under § 647.6(a) can be based on behavior that, while criminal, does not rise to the level of a 'crime involving moral turpitude.' " Concurring Op. at 4341.

Villareal had prior (unspecified) felony convictions and was on probation. His hearing in this case was to revoke his probation because he had violated § 647.6(a). Villareal contested the sufficiency of the evidence to support the order revoking his probation. Villareal had stopped a thirteen-year old girl and asked her name and where she was going. Villareal then asked her if she had gone "to see the flag," a reference to a remote area known as a "make-out point." *Id.* at *1 & n.2. He told her that "when I look at you I see stars," which the girl took—based on the way that he "smirk[ed] at her"—as "inappropriately sexual." *Id.* at *1. The victim, describing herself as "scared and violated," began running from Villareal, who followed her in his truck and continued to talk to her. Villareal finally drove away. The victim complained to her mother, a police officer, who confronted Villareal. When a second officer arrived and arrested Villareal, he told the second officer that the victim was "a cute girl." At his probation violation hearing, Villareal explained that when he saw the victim "there was like a glimmering around her like an aura of some sort. I see things sometimes. And so it made me excited and that's why I stopped." *Id.* at *1. He admitted that "his comment about seeing stars was 'kind of inappropriate, being that it was kind of strange,' " and although he denied having any sexual intent in speaking to the victim, he stated "I remember I felt happy about it, that I had seen that and it seemed kind of special and I was happy." *Id.*

The California Court of Appeal concluded in a very brief unpublished opinion that there was sufficient evidence to support revoking Villareal's probation. The court first recited the standard, conduct (1) that "a normal person would unhesitatingly be irritated by" and (2) that was "motivated by an unnatural or abnormal sexual interest." *Id.* at *2 (internal quotation marks and citations omitted). The court found that "stopp[ing] to talk to a 13-year old girl who was walking alone on an isolated street," referring to "a local 'make out' spot and to seeing stars" would irritate a normal person and "demonstrate that the conversation was motivated by [Villareal's] sexual

interest in [the victim]." *Id.* The court pointed to the victim's testimony that she believed that his "comments were sexual in nature and testified that he was 'smirking' at her." *Id.*

Judge Fletcher claims that he does not question whether *Villareal* is a "proper holding that Villareal violated § 647.6(a)." Maj. Op. at 4334. But that is exactly what he has done. Judge Fletcher retells the story from Villareal's perspective—Villareal saw a "cute" girl, thought she was older, asked her if she had been to a make-out spot, said he saw "stars," and then followed her in his truck to offer her a ride. *See* Maj. Op. at 4332-33. But that sterile retelling is not what the victim testified to, or what the trier of fact was required to find. The victim told a story of a prelude to a rape —of being approached by a stranger who "smirk[ed]" and asked "inappropriately sexual" comments; of being followed by the man in his truck even after she ran away from him; of being "scared and violated." The trier of fact heard both stories, including from Villareal himself, who admitted that his comments were "inappropriate" and "kind of strange" and admitted that seeing stars around her "made [him] excited" and "happy" and "seemed kind of special." The trier of fact determined that Villareal engaged in offensive behavior that was motivated by unnatural or abnormal sexual interest in the victim, a judgment Judge Fletcher concedes was a "proper holding." Given that *Villareal*—and every other § 647.6(a) case, both published and unpublished—involves conduct that fits within our prior definition of "moral turpitude," I have no hesitation in concluding that Nicanor-Romero was convicted of a crime involving moral turpitude.

Finally, I object to the use of an unpublished decision in this way. I do not believe that the Supreme Court in *Duenas-Alvarez* meant for us to take the least generous approach possible in analyzing state cases under the categorical approach, as Judge Fletcher does in his discussion of *Villareal*. California courts universally require a showing that the defendant was motivated by an abnormal or unnatural sexual interest—

in other words, a predatory interest—in addition to evidence that the victim was a minor. In most of the reported cases, the court makes clear that the defendant was motivated by that type of interest; in the sole reported case the majority cites as suggesting that the *mens rea* is something less, the question of the defendant's *mens rea* was not even raised on appeal. *See Thompson*, 253 Cal. Rptr. at 566. Judge Fletcher is thus left with two cases, *Dunford*, which I have shown clearly sets forth the abnormality of the defendant's sexual interest, and *Villareal*, where the court admittedly spends little time dealing with the question of the nature of the defendant's sexual interest and which a majority of this panel has found to involve a crime of moral turpitude. *See* Concurring Op. at 4341.

Judge Fletcher takes me to task for objecting to his use of an *unpublished* opinion to satisfy the requirements of *Duenas-Alvarez*. *See* Maj. Op. at 4331. There may be situations where the "realistic probability" requirement of *Duenas-Alvarez* is satisfied by relying on unpublished decisions. But this certainly is not one of those situations, and this case illustrates precisely why it is unwise to rely on a single unpublished decision (or to elevate to published status an unpublished California decision, *see* Maj. Op. at App. A) to determine whether there is a "realistic probability" that California prosecutors use § 647.6(a) to convict individuals for non-morally turpitudinous conduct. There is no in-depth discussion in *Villareal*, as there likely would be in a published opinion, of the elements of the crime. Furthermore, the procedural posture of *Villareal*—revocation of probation, not a trial after indictment or information—means that the standard of proof was lower than the "beyond a reasonable doubt" standard required in a criminal trial.[12] *See Villareal*, 2003 WL 21153430, at *2

---

[12]Judge Fletcher says that this distinction only makes a difference if the behavior covered by the statute varies with the standard of proof. Maj. Op. at 4335. But I suspect that the standard of proof played a major role in defense counsel's strategy at the parole revocation hearing—and, accordingly, the issues on which the California court commented in its terse two-page decision.

("Before revoking appellant's probation, the trial court was required to find *by a preponderance of the evidence*, that he violated section 647.6, subdivision (a)." (emphasis added) (citing *People v. Rodriguez*, 795 P.2d 783, 785 (Cal. 1990))). However it is characterized, *Villareal* does not demonstrate "a realistic probability . . . that the State would apply its statute to conduct that falls outside the generic definition." *Duenas-Alvarez*, 127 S. Ct. at 822. Given the unanimous view and consistent application of the statutory requirements by California courts, I do not believe that we may seize on a cursory discussion in an unpublished opinion to support a conclusion that the statute fails the categorical test. Rather, we should evaluate the offensiveness of the defendant's conduct in *Villareal*, and in all other cases, in light of the necessary finding that the defendant acted with an abnormal or unnatural sexual intent.

## IV

Nicanor-Romero was convicted under a statute that requires the willful commission of an act that by its very nature is reprehensible and contrary to American ethics. California courts view violation of § 647.6(a) as a sex crime involving moral turpitude. So should we. I would find that Nicanor-Romero is removable under 8 U.S.C. § 1227(a)(2)(A)(i).

I respectfully dissent.